UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————— x

THE PROCTER & GAMBLE COMPANY,       :

                Plaintiff,       :       08 Civ. 01532 (WHP)

                :

        - against -       :

                :

PLAYTEX PRODUCTS, INC.,       :

              Defendant.       :

————————————————————————— x

MEMORANDUM OF PLAINTIFF THE PROCTER & GAMBLE
COMPANY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 AVENUE OF THE AMERICAS   NEW YORK NY 10036

Table of Contents

Table of Authorities..................................................................................................................ii

Preliminary Statement ...........................................................................................................1

Facts.........................................................................................................................................3

    A.    The Court issues the Injunction in May 2003 barring P&G's claims
          of superior leakage protection ...................................................................................3

    B.    The Court lifts the Injunction based on P&G's changes to Tampax
          Pearl and P&G's showing of superior leakage protection...........................................5

    C.    Playtex threatens to sue P&G if it disseminates the claim upheld by
          the Court as truthful ...................................................................................................8

    D.    The pleadings in this action .......................................................................................11

Argument ................................................................................................................................11

          THE COURT'S DECISION LEGALLY BARS PLAYTEX FROM
          CHALLENGING ANY ADVERTISING CLAIM THAT TAMPAX
          PEARL PROVIDES SUPERIOR PROTECTION COMPARED TO
          GENTLE GLIDE....................................................................................................11

    A    The principles underlying *res judicata* ....................................................................12

    B    Playtex is precluded from re-litigating the same claim based on pre-judgment
          facts and evidence.......................................................................................................15

    C    Playtex's prior position concerning "material change" is irrelevant ..........................19

Conclusion...............................................................................................................................20

Table of Authorities

Page

Cases:

*Ahmed v. INS*,
No. 95 Civ. 762, 1995 WL 489710 (S.D.N.Y. Aug. 15, 1995)................................................14

*Allen v. McCurry*,
449 U.S. 90 (1980) .............................................................................................................12

*Archie Comic Publ'ns, Inc. v. DeCarlo*,
258 F. Supp. 2d 315 (S.D.N.Y. 2003) .............................................................................12, 14

*Cromwell v. County of Sac*,
94 U.S. 351 (1876) .............................................................................................................13

*EDP Med. Computer Sys., Inc. v. United States*,
480 F.3d 621 (2d Cir. 2007)..........................................................................................12, 13

*Federated Dep't Stores, Inc. v. Moitie*,
452 U.S. 394 (1981) ....................................................................................................3, 12, 13

*Guerrero v. Katzen*,
774 F.2d 506 (D.C. Cir. 1985) .............................................................................................18

*Mademoiselle Knitwear, Inc. v. Liz Claiborne, Inc.*,
No. 98 Civ. 3252, 1999 WL 377853 (S.D.N.Y. June 9, 1999) ........................................13-14

*Matthew Bender & Co. v. West Publ'g Co.*,
158 F.3d 674 (2d Cir. 1998)................................................................................................18

*Montana v. United States*,
440 U.S. 147 (1979).............................................................................................................15

*Playtex Prods., Inc. v. Procter & Gamble Co.*,
No. 02 Civ. 8046, 2008 WL 399295 (S.D.N.Y. Feb. 11, 2008)......................................*passim*

*Saud v. Bank of New York*,
929 F.2d 916 (2d Cir. 1991).................................................................................................13

*Sumter v. Babbitt*,
No. 96 CV 0510, 1999 WL 1011946 (E.D.N.Y. Sept. 30, 1999) .........................................15

*Sure-Snap Corp. v. State Street Bank & Trust Co.*,
948 F.2d 869 (2d Cir. 1991).................................................................................................13

KL3 2653471.1

Table of Authorities
(continued)

Page

*United States v. GK Techs., Inc.,*
  No. IP-90-2122-C-D/F, 1996 WL 164374 (S.D. Ind. Jan. 23, 1996)....................................15

*Woods v. Dunlop Tire Corp.,*
  972 F.2d 36 (2d Cir. 1992) ..................................................................................................13

Statutes:

Fed. R. Civ. P. 56................................................................................................................1, 11

Fed. R. Civ. P. 59...................................................................................................................17

Fed. R. Civ. P. 60..............................................................................................................2, 5, 15

Lanham Act, 15 U.S.C. § 1125(a) ...........................................................................................4

Miscellaneous:

Moore's Federal Practice (3d ed. 2008) .................................................................................17

Restatement (Second) of Judgments (1982)...........................................................................14

Preliminary Statement

Plaintiff The Procter & Gamble Company ("P&G") respectfully submits this memorandum in support of its motion, pursuant to Fed. R. Civ. P. 56, for summary judgment on its First Claim for Relief in its Amended Complaint. In that claim, P&G seeks a declaration that defendant Playtex Products, Inc. ("Playtex") is precluded on grounds of *res judicata* from challenging any advertising claim by P&G that its currently marketed Tampax Pearl tampons provide superior leakage protection compared to Playtex's currently marketed Gentle Glide tampons, as Playtex has now asserted in a counterclaim filed in this action. P&G also requests summary judgment dismissing the counterclaim on the same grounds.

In a prior action between Playtex and P&G before this Court, P&G moved for relief from a Judgment and Order of Permanent Injunction (the "Injunction"), entered after trial in May 2003, which had barred P&G from advertising that Tampax Pearl tampons provide superior leakage protection compared to Gentle Glide tampons. P&G's motion was based on material modifications made to Tampax Pearl in the years following the Injunction that P&G believed significantly improved its leakage protection performance compared both to the prior version as well as to Gentle Glide. After a bench trial on June 19-21, 2007, the Court on February 6, 2008 issued a Memorandum and Order (the "Decision") finding that P&G had significantly improved Tampax Pearl's protection and that an advertising claim by P&G that Tampax Pearl provides superior protection compared to Gentle Glide is not false or misleading. Accordingly, the Court vacated the Injunction to the extent it prohibited that advertising claim. *See Playtex Prods., Inc. v. Procter & Gamble Co.*, No. 02 Civ. 8046, 2008 WL 399295 (S.D.N.Y. Feb. 11, 2008) (Attached as Exhibit A to Declaration of Harold P. Weinberger, Esq., dated May 1, 2008 ("Weinberger Decl.")).

The same day the Court issued its Decision, Playtex wrote P&G a letter in which it threatened to sue P&G if it were to disseminate the very advertising claim the Court had just held was not false or misleading. The basis for Playtex's threat was its position that Playtex, too, has created a new version of its product that purportedly provides leakage protection at parity with Tampax Pearl. Playtex has acknowledged that it had already decided to market this supposed new version of its product at the time of the June 2007 hearing; that sometime shortly thereafter it began selling the product; that before the Court's February 6, 2008 Decision, the prior version was no longer in the marketplace; and that the testing evidence on which Playtex now seeks to rely was in hand prior to the Decision.

Raising the purported changes to Gentle Glide prior to this Court's Decision would have been potentially both helpful and harmful for Playtex. That is because P&G's June 2007 motion sought relief on two grounds: (i) that the change in leakage protection provided by the new version of Tampax Pearl constituted a "significant change in factual circumstances" warranting relief from the Injunction pursuant to Fed. R. Civ. P. 60(b)(5); and (ii) that an advertising claim of superiority fell within the scope of and was permitted by paragraph 8 of the Injunction, which provided that P&G could make "supported claims concerning materially changed versions of the parties' tampon products." If Playtex had put in issue that changes to its product would be expected to affect leakage protection, it might have been able to undermine the validity of the P&G leakage protection study upon which the Court ultimately based its decision, because that study tested the Gentle Glide product that was on the market prior to the time the motion was made. On the other hand, P&G would have been able to assert that the change to Gentle Glide was another "significant change in factual circumstances"; that the Gentle Glide product that was the subject of the original trial in 2003 was "materially changed" under

paragraph 8 of the Injunction; and that the types of changes to Gentle Glide that Playtex asserted were significant underscored that the changes made to P&G's product were significant as well.

Playtex made a tactical decision not to raise the allegedly altered Gentle Glide product as a defense to P&G's motion, obviously concluding that it stood to lose more than it stood to gain. As is now clear, Playtex was attempting to play "heads-I-win, tails-you-lose" by waiting to see how the Court would rule and, if it lost, trying to re-litigate the very claim resolved by the Court on the ground that the leakage protection testing offered at trial and relied upon by the Court is no longer relevant. As a matter of law, however, Playtex is bound by the decision it made because the doctrine of *res judicata*, that fundamental rule of "public policy and of private peace," *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981), bars Playtex from re-litigating the comparative leakage protection claim concerning the parties' products on the basis of any evidence that Playtex could have offered in the prior action up until the time of a final decision in the action. That Playtex could have offered the evidence on which it now seeks to rely prior to the Decision is uncontrovertible.

<u>Facts</u>

The facts set forth below, based principally on this Court's February 6, 2008 Decision (Weinberger Decl., Exh. A), are undisputed or cannot fairly be disputed by Playtex.

A.    The Court issues the Injunction in May 2003
      <u>barring P&G's claims of superior leakage protection</u>

P&G and Playtex are the two principal competitors in the tampon market. Playtex markets a plastic tampon applicator product called Gentle Glide. In 2002, P&G introduced a

competing plastic tampon applicator product called Tampax Pearl. (Weinberger Decl., Exh. L ¶ 6; *id.*, Exh. M ¶ 6).

In October 2002, Playtex commenced an action against P&G in this Court alleging that P&G's advertising for its Tampax Pearl tampons violated the Lanham Act, 15 U.S.C. § 1125(a), and state unfair competition law. *Playtex Prods.*, 2008 WL 399295, at *1 (Weinberger Decl., Exh. A). In May 2003, a jury found that P&G's advertising claims that Tampax Pearl was superior to Gentle Glide with respect to leakage protection and comfort violated the Lanham Act. *Id.* Thereafter, on May 29, 2003 the Court issued the Injunction, which permanently enjoined P&G from advertising that:

> (a) Tampax Pearl tampons are superior in wearing comfort or protection to Playtex Gentle Glide tampons; and (b) Tampax Pearl tampons are superior in absorbency to or have an absorbent braid for better protection than Playtex Gentle Glide tampons, either explicitly or implicitly by reference to "the leading plastic" applicator tampon, and without limitation of reference to the use of comparative words such as "superior," "better," or "more" . . . .

(Weinberger Decl., Exh. B ¶ 1).

Recognizing that companies often modify their products in ways that affect performance, the Court provided in paragraph 8 of the Injunction that "Nothing in this Judgment and Order shall preclude P&G from making supported claims concerning materially changed versions of the parties' tampon products." (*Id.* ¶ 8). Thus, P&G could make an advertising claim of superior protection in the future, but only if it could establish that (i) one or both of the products had materially changed, and (ii) such a claim was substantiated.

KL3 2653471.1

B.    The Court lifts the Injunction based on P&G's changes to
      Tampax Pearl and P&G's showing of superior leakage protection

In 2004, P&G began development of a new version of its product with improved leakage protection performance, which subsequently culminated in the launch of a new Tampax Pearl. *Playtex Prods.*, 2008 WL 399295, at *1 (Weinberger Decl., Exh. A). P&G conducted extensive testing of New Pearl, including comparative testing against Gentle Glide. *Id.* at *2-3. P&G's testing showed that not only was New Pearl an improvement over Old Pearl, but also that New Pearl provided superior leakage protection compared to Gentle Glide. *Id.*

Accordingly, on June 8, 2007, P&G moved for relief from the Injunction on two grounds. First, it asked the Court to vacate the Injunction because changes to the leakage protection performance of New Pearl compared to Old Pearl and Gentle Glide constituted a "significant change in factual circumstances" under Fed. R. Civ. P. 60(b)(5). *Playtex Prods.*, 2008 WL 399295, at *1, 5 (Weinberger Decl., Exh. A).   (Weinberger Decl., Exh. C). Alternatively, P&G asked the Court to find that a claim that New Pearl provides superior leakage protection compared to Gentle Glide fell within the scope of and was permitted by paragraph 8 of the Injunction. *Playtex Prods.*, 2008 WL 399295, at *1, 5 (Weinberger Decl., Exh. A). (Weinberger Decl., Exh. C). To obtain relief from the Injunction on either ground, P&G had to show that New Pearl provided superior leakage protection compared to Gentle Glide; if Tampax Pearl had been materially changed but still did not provide superior leakage protection, there would have been no basis upon which to lift the Injunction's prohibition against such claims.

Prior to P&G's motion, the parties had conducted extensive discovery that focused primarily on the changes P&G had made to Tampax Pearl tampons and performance testing comparing New Pearl and Old Pearl, and New Pearl and Gentle Glide. *See Playtex*

*Prods.*, 2008 WL 399295, at *1-4 (Weinberger Decl., Exh. A). Thereafter, the Court conducted a three-day bench trial on June 19-21, 2007. A total of ten witnesses testified, and the parties presented to the Court substantial documentary evidence. Each side introduced into evidence leakage protection studies comparing Tampax Pearl and Gentle Glide. The parties also filed extensive pre- and post-trial written submissions. (Weinberger Decl., Exh. L ¶ 12; *id.*, Exh. M ¶ 12).

Shortly before filing its motion to vacate or clarify, P&G became aware that Playtex had decided to market what Playtex characterized as a new version of Gentle Glide. Playtex has since confirmed that it was "about to" commercialize New Gentle Glide at the time of the June 2007 trial. (Weinberger Decl., Exh. H). To ensure that the trial would not be a waste of the parties' and the Court's resources, P&G inquired of Playtex as to its position concerning the impact of that supposed new version on the then upcoming hearing. (Weinberger Decl., Exh. D). By letter dated June 1, 2007, counsel for Playtex represented to P&G's counsel that "New Gentle Glide is substantially equivalent to the Gentle Glide product that was the subject of the Court's injunction ('Old Gentle Glide'). Accordingly, it is not materially changed." (Weinberger Decl., Exh. E). The letter also stated that "it is Playtex's position that a newly fielded test between New Pearl and New Gentle Glide may yield different results from the existing tests between New Pearl and Old Gentle Glide." (*Id.*) Playtex's counsel concluded by asserting that "[i]f P&G elects to go forward with the hearing as scheduled, it will be Playtex's position that P&G will be precluded from seeking additional relief from the injunction based on New Gentle Glide." (*Id.*)

Relying on Playtex's representations concerning the absence of any material change and that it was "substantially equivalent," P&G determined not to retest New Pearl

- 6 -

against the supposed new version of Gentle Glide and to proceed with the hearing. (*See* Weinberger Decl., Exh. F).

Playtex reiterated its position in a footnote in its pre-hearing memorandum. (Weinberger Decl., Exh. G at 4 n.1). Playtex noted that it had "elected" to introduce New Gentle Glide into the market, and further stated, as it had to P&G, that "New Gentle Glide is not a 'materially changed' product under the Injunction Order despite being an improved product." (*Id.*)

At the June 2007 trial, and in its post-trial submissions, Playtex made several arguments in an effort to challenge P&G's *in vivo* study comparing the leakage protection of New Pearl and Gentle Glide. *See Playtex Prods.*, 2008 WL 399295, at *3-4 (Weinberger Decl., Exh. A). But Playtex did not offer any evidence with respect to the purportedly new version of Gentle Glide. Specifically, Playtex did not argue that P&G's study was inadequate or irrelevant because it did not test the supposed new version of Gentle Glide.[1]

In August 2007, just two months after the hearing but six months before the Court issued its Decision, Playtex issued a press release announcing that New Gentle Glide was available on store shelves. Contrary to the statements made both to P&G and the Court, Playtex hailed the new version of its product as "a major breakthrough in design" and claimed that "the new Gentle Glide tampon has been redesigned to give women Playtex Gentle Glide's best protection ever." (Weinberger Decl. Exh. I).

---

[1]      A box of New Gentle Glide did make a brief appearance at the hearing when, on cross-examination, P&G's counsel confronted one of Playtex's experts with claims on Playtex's new packaging of "Our best protection with our most advanced design . . . ever." (Weinberger Decl., Exh. J).

KL3 2653471.1

On February 6, 2008, the Court issued its Decision granting P&G's motion and setting forth the Court's findings of facts and conclusions of law. After reviewing the significant changes made by P&G to create the new version of Tampax Pearl, the Court found that the P&G study showing Tampax Pearl's superiority over Gentle Glide for leakage protection "was rigorous in its methodology." *Playtex Prods.*, 2008 WL 399295, at *3-4 (Weinberger Decl., Exh. A). In contrast, the Court held that "the Playtex Study was flawed in several respects," including that it "failed to simulate normal consumer usage." *Id.* at *4. Overall, the Court found that "the P&G Study [is] more reliable than the Playtex Study. . . ." *Id.* The Court thus concluded as follows:

> Given the relative strength of the P&G Study, P&G's *in vitro* and *in vivo* tests supporting New Pearl's improved absorbency, and expert testimony linking P&G's manufacturing changes to the improvements, this Court finds P&G has demonstrated significant change in the absorbency of its Tampax Pearl tampons relative to Gentle Glide. Moreover, because the information is not false or misleading, disseminating it is in the public interest. Accordingly, this Court will remove the prohibitions against P&G advertising New Pearl's superior absorbency and protection from the Injunction Order.

*Id.* at *5.[2]

C.    Playtex threatens to sue P&G if it disseminates
the claim upheld by the Court as truthful

Within hours of the Court's decision, the Vice President & General Counsel of Playtex's new parent company, Energizer Holdings, Inc. ("Energizer"), wrote to P&G's inside counsel, threatening to sue P&G if P&G aired advertising claims that Tampax Pearl was superior

---

[2]    The Clerk of the Court entered the Court's February 6, 2008 Memorandum and Order the same day it was issued. The Court amended its Order on February 11, 2008 to redact certain trade secret information. On consent of both parties, on April 1, 2008, the Court vacated the Injunction in its entirety. (Weinberger Decl., Exh. K).

to Gentle Glide with respect to leakage protection — the very claim the Court had held just hours earlier was not false or misleading. As the letter stated:

> We have reviewed Judge Pauley's February 6 Memorandum and Order arising from the June, 2007 hearing. As you know, the Playtex product at issue in that hearing was Old Gentle Glide, which is now no longer on the market. I understand that P&G was aware at the time the hearing commenced that Playtex was about to commercialize New Gentle Glide, but nevertheless declined to place New Gentle Glide in issue.

(Weinberger Decl., Exh. H).

The letter further asserted that the purportedly new version of Gentle Glide "has important performance advantages over Old Gentle Glide," and that Energizer has "data that shows no protection difference between New Pearl and New Gentle Glide." As a result, the letter continued, any advertising claim by P&G that Tampax Pearl provides superior leakage protection over Gentle Glide is not supported by the P&G leakage protection study relied upon by the Court and is false because "any claims of superior protection or absorbency over New Gentle Glide must be independently substantiated. . . ." The letter concluded by putting P&G "on notice that any claims by P&G of superior protection or absorbency of New Pearl over New Gentle Glide will, in our view, be false and subject to challenge in court." *Id.*

The Energizer letter and the other documents described above demonstrate that Playtex created, was on notice, aware, and/or in control, of the following facts and evidence concerning New Gentle Glide, including New Gentle Glide's supposedly improved leakage protection:

- Playtex developed and was "about to" introduce New Gentle Glide into the market at the time of the hearing (Weinberger Decl., Exh. H);

- 9 -

- Prior to the hearing, Playtex believed that the changes it made to Gentle Glide could affect that product's leakage protection, as Playtex asserted that "a newly fielded test between New Pearl and New Gentle Glide may yield different results from the existing tests between New Pearl and Old Gentle Glide" (Weinberger Decl., Exh. E);

- Playtex stated in its pre-trial memorandum that it believed that New Gentle Glide was an "improved product" (Weinberger Decl., Exh. G at 4 n.1);

- Before the hearing, Playtex was producing packaging for New Gentle Glide claiming the newly designed product provided "Our best protection with our most advanced design . . . ever" (Weinberger Decl., Exh. J);

- Shortly after the hearing, Playtex issued a press release stating that New Gentle Glide was "a major breakthrough in design" and provides "Playtex Gentle Glide's best protection ever" (Weinberger Decl., Exh. I);

- At least six months before the Decision, Playtex introduced the alleged new version of Gentle Glide into the market and, before the Decision, New Gentle Glide had completely replaced Old Gentle Glide in the marketplace. (Weinberger Decl., Exh. H);

- Prior to the Decision, Playtex obtained some sort of evidence purporting to show that New Gentle Glide has "important performance advantages over Old Gentle Glide" (*id.*); and

- Prior to the Decision, Playtex performed and analyzed the results of a leakage protection study comparing New Gentle Glide and New Pearl, which purportedly showed parity between the products. (*Id.*)[3]

---

[3]  It is also hard to believe that Playtex did not perform some sort of test or analysis comparing the characteristics or performance of Old Gentle Glide versus New Gentle Glide prior to its decision to market the latter, which was made before the hearing. Playtex was already producing packaging claiming improved performance before the hearing (Weinberger Decl., Exh. J), and just two months after the hearing, Playtex issued a statement that Gentle Glide had been "redesigned to give women Playtex Gentle Glide's best protection ever." (Weinberger Decl., Exh. I). But for purposes of this motion, we assume the testing occurred after the hearing but before the Decision.

Despite these facts, Playtex made no attempt to reopen or supplement the evidentiary record or in any way seek to raise the argument that P&G's testing was no longer relevant.

D.    The pleadings in this action

In light of Playtex's threat, P&G commenced this action on February 14, 2008 and filed an Amended Complaint on March 25, 2008.  P&G's First Claim for Relief seeks a declaratory judgment that Playtex is precluded on *res judicata* grounds from relitigating P&G's right to advertise that Tampax Pearl is superior to Gentle Glide with respect to leakage protection.  (Weinberger Decl., Exh. L ¶¶ 28-33).  Playtex has asserted a counterclaim alleging that advertising P&G has disseminated after, and consistent with, the Court's February 6, 2008 Decision that Tampax Pearl "protects even better than the next leading brand" is false and misleading.  According to Playtex, P&G's advertising is false because "P&G has no *in vivo* comparative testing supporting a claim that New Pearl protects better than Playtex's New Gentle Glide" and "Playtex has *in vivo* testing establishing that New Pearl and New Gentle Glide are at parity for protection."  (Weinberger Decl., Exh. M at 9 ¶¶ 12-13).

<u>Argument</u>

THE COURT'S DECISION LEGALLY BARS PLAYTEX FROM
CHALLENGING ANY ADVERTISING CLAIM THAT TAMPAX PEARL
<u>PROVIDES SUPERIOR PROTECTION COMPARED TO GENTLE GLIDE</u>

Summary judgment should be granted when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  As a matter of law and undisputed fact, and based on principles of *res judicata*, P&G is entitled to a judgment declaring that this Court's Decision bars Playtex from challenging P&G's advertising claims of superior protection for Tampax Pearl, and to dismissal of Playtex's

- 11 -

counterclaim, because Playtex was in a position to but did not raise the alleged changes to the Gentle Glide product prior to the Decision. *See, e.g., EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 625 (2d Cir. 2007) (affirming grant of summary judgment barring claim on *res judicata* grounds); *Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 327-28 (S.D.N.Y. 2003) (granting summary judgment and holding that plaintiff was entitled to declaration, based on *res judicata*, that defendant may not challenge plaintiff's rights to comic book character established by prior judgment).

A.    The principles underlying *res judicata*

Res judicata "is a rule of fundamental repose important for both the litigants and for society." *EDP Med. Computer Sys.*, 480 F.3d at 625. *See also Allen v. McCurry*, 449 U.S. 90, 94 (1980) (*res judicata* "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication."). The Supreme Court has emphasized that *res judicata* serves "vital public interests" by dictating "that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981). *See also id.* (holding that doctrine of *res judicata* "is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts.").

The principle of *res judicata* bars "later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the

- 12 -

same parties or their privies, and (4) involving the same cause of action." *EDP Med. Computer Sys.*, 480 F.3d at 625. In determining the sameness of claims, courts look at whether the same transaction, evidence and factual issues are involved, as well as "whether an independent judgment in a separate proceeding would 'impair or destroy rights or interests established by the judgment entered in the first action.'" *Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869, 874 (2d Cir. 1991) (citation omitted).

Significantly, *res judicata* bars relitigation not only of issues actually litigated but of any other issues that could have been raised as a defense to the previously litigated claim. *See Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876) (*res judicata* bars "not only . . . every matter which was offered and received to sustain or defeat the claim or demand, but . . . any other admissible matter which might have been offered for that purpose"). As stated by the Supreme Court, a "final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." *Federated Dep't Stores,* 452 U.S. at 398. A judgment provides finality "not only as respects matter actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end." *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) (citing *Cromwell*, 94 U.S. at 352). New or additional evidence offered in a subsequent action "does not preclude the application of *res judicata*." The only exceptions to this rule are "when the evidence was either fraudulently concealed or when it could not have been discovered with due diligence." *Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991) (affirming district court's grant of motion to dismiss and precluding party from bringing claim based on facts of which party was on notice but failed to raise as defense during prior litigation); *Mademoiselle Knitwear, Inc. v. Liz Claiborne, Inc.*, No. 98 Civ. 3252, 1999 WL 377853 at *5-8 (S.D.N.Y. June

9, 1999) (granting motion to dismiss complaint on *res judicata* grounds where newly alleged facts were "in existence" during earlier proceedings).

For example, in *Archie Comic Publications, Inc. v. DeCarlo*, 258 F. Supp. 2d 315 (S.D.N.Y. 2003), defendant DeCarlo had previously sued plaintiff, Archie Comic Publications ("ACP"), for a declaration that DeCarlo owned the copyright to a comic book character. The court ruled on summary judgment that DeCarlo was equitably estopped from claiming ownership rights to the character. Nevertheless, after judgment, DeCarlo came forward with new evidence which, he argued, would have defeated summary judgment. In response, ACP brought a second action seeking a declaration that DeCarlo was precluded by the court's prior judgment from challenging ACP's ownership rights. In granting summary judgment in favor of ACP, the court held that, even if the evidence advanced by DeCarlo would have defeated summary judgment in the prior action, *res judicata* still applied because DeCarlo possessed or had access to that evidence at the time the prior action was litigated. *Id.* at 327-28.

Finally, and also important for purposes of this case, *res judicata* bars any challenge to a prior judgment when the challenge is based on facts in existence prior to or at the time of the final judgment. *See Ahmed v. INS*, No. 95 Civ. 762, 1995 WL 489710, at *4-5 (S.D.N.Y. Aug. 15, 1995) (precluding second action as a "do-over" where additional information relied upon by plaintiff was in existence during prior litigation; plaintiff had an "obligation" to raise allegation based on additional information "before I reached my final decision."); Restatement (Second) of Judgments § 24, cmt. f (1982) (defining "change of circumstances" permitting a party to avoid *res judicata* effect of prior judgment as follows: "Material operative facts *occurring after the decision of an action* with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may

- 14 -

be made the basis of a second action not precluded by the first.") (emphasis added); *cf. Montana v. United States*, 440 U.S. 147, 155 (1979) (application of collateral estoppel turns in part on "whether controlling facts or legal principles have changed significantly *since the [prior] judgment*") (emphasis added); *Sumter v. Babbitt*, No. 96 CV 0510, 1999 WL 1011946, at *1 (E.D.N.Y. Sept. 30, 1999) (after bench trial, denying motion for new trial pursuant to Fed. R. Civ. P. 60(b)(2) where plaintiff "admits the [allegedly new] evidence was discoverable before the entry of judgment"); *United States v. GK Techs., Inc.*, No. IP-90-2122-C-D/F, 1996 WL 164374, at *2 (S.D. Ind. Jan. 23, 1996) (noting that, under Fed. R. Civ. P. 60(b)(5), "Changes in law or fact *after entry of a judgment* may . . . warrant modification of a judgment that has prospective application.") (emphasis added).

B.     Playtex is precluded from re-litigating the same
       claim based on pre-judgment facts and evidence

The cause of action litigated in the prior action and that was the subject of P&G's motion in that action, which was finally resolved by the Court's February 6, 2008 Decision, was that an advertising claim that Tampax Pearl tampons are superior in leakage protection to Gentle Glide tampons was false and misleading. *Playtex Prods.*, 2008 WL 399295, at *5 (Weinberger Decl., Exh. A). That is the exact claim Playtex now seeks to re-litigate.

In the prior action, P&G moved for relief from that portion of the Injunction barring P&G from advertising that Tampax Pearl provides superior leakage protection compared to Gentle Glide. The parties presented evidence at the June 19-21, 2007 trial comparing the leakage protection provided by Tampax Pearl and Gentle Glide. Both parties introduced studies purporting to show the relative protection provided by these products, and both parties challenged the adequacy and reliability of each others' study. In its Decision, the Court found

- 15 -

that P&G's study was more reliable than Playtex's study, and that an advertising claim that Tampax Pearl is superior in protection to Gentle Glide is not false or misleading. *Id.*

Playtex now contends that an advertising claim by P&G that Tampax Pearl provides superior protection to Gentle Glide is false because (i) New Gentle Glide provides leakage protection "advantages" over Old Gentle Glide, which is no longer on the market, (ii) the P&G study upon which the Court based its decision does not substantiate a claim of superiority because it did not test New Gentle Glide, and (iii) Playtex has a study showing no protection difference between New Pearl and New Gentle Glide. (Weinberger Decl., Exh. H). Although Playtex chose for strategic reasons not to raise these arguments at the hearing or before the Decision, it clearly could have done so and is thus barred from raising them now. (*See* cases cited at pp. 13-14, above).

As Playtex has admitted, it was "about to" start selling the supposed new version of Gentle Glide when the hearing took place. (Weinberger Decl., Exh. H; *see also id.*, Exh. G at 4 n.1). Playtex also asserted at the time of the hearing that "a newly fielded test between New Pearl and New Gentle Glide may yield different results from the existing tests between New Pearl and Old Gentle Glide" (Weinberger Decl., Exh. E) and that New Gentle Glide was an "improved product" (Weinberger Decl., Exh. G at 4 n.1). Thus, it would have been timely and relevant for Playtex to raise at the hearing evidence of any changes potentially affecting the protection provided by its tampons. Even if it had not conducted tests of the products, Playtex could have offered evidence concerning the changes it made to its tampon and the expected effect of those changes on leakage protection. Such evidence — which Playtex was in a unique position to know about — would have been directly relevant to the claim being litigated as it might have undermined P&G's leakage protection study and thus its entire motion, particularly

- 16 -

since P&G had the burden of proving that its claim was "supported." (Weinberger Decl., Exh. B ¶ 8).

In any event, all the facts and evidence upon which Playtex now relies to claim Gentle Glide's purportedly improved protection were known to Playtex and in its possession before the February 6, 2008 Decision. As noted, for *res judicata* purposes, the key trigger is the judgment: the doctrine precludes a party from re-litigating a claim based on supposed changed facts or additional evidence arising prior to final decision. (*See* cases cited at pp. 14-15, above). Here, there is no dispute that, prior to the Decision, Playtex had not only introduced the alleged new version of Gentle Glide into the market, but had completely replaced Old Gentle Glide with New Gentle Glide. (Weinberger Decl., Exh. H). Playtex also issued a press release just two months after the hearing and six months before the Court's Decision stating that New Gentle Glide gives "women Playtex Gentle Glide's best protection ever." (Weinberger Decl., Exh. I). And before the Court rendered its decision, Playtex obtained some sort of evidence purporting to show that New Gentle Glide has "important performance advantages over Old Gentle Glide," and purportedly performed and analyzed the results of a leakage protection study supposedly showing parity between New Gentle Glide and New Pearl. (Weinberger Decl., Exh. H).

Playtex clearly had the ability to bring all these matters to the Court's attention. In the approximately eight months after the hearing and before the Decision, Playtex could have sought to reopen the record. Indeed, Fed. R. Civ. P. 59(a)(2) provides that "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." *See also* 12 Moore's Federal Practice § 59.13[3][c] (3d ed. 2008) (motion to reopen to take additional testimony is "most commonly made . . . while the

- 17 -

judge has the case under advisement in nonjury actions."). The Court of Appeals has specifically indicated that a court may take additional evidence after a bench trial and prior to judgment. *See Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 679 (2d Cir. 1998) (holding district court did not abuse discretion in admitting additional testimony following close of evidence at bench trial and prior to judgment where testimony was important, there was a full opportunity for cross-examination, no prejudice resulted, and decision to reopen "served judicial efficiency").

In *Guerrero v. Katzen*, 774 F.2d 506 (D.C. Cir. 1985), plaintiff argued that the discovery of evidence "after judgment" in the prior action precluded the application of *res judicata*. After noting that newly discovered evidence does not prevent the application of *res judicata* unless there was fraud or the evidence could not have been discovered with due diligence, the Court of Appeals for the District of Columbia Circuit held:

> We find no support in the record for the application of either exception. In particular, it is noteworthy that Dr. Guerrero concedes that he was aware of this alleged new evidence prior to the final dismissal of his appeal from the judgment of the Circuit Court of Fairfax County. Yet, he never sought a rehearing or a reopening of the record in that action. Clearly, Dr. Guerrero could have litigated the significance of his alleged newly discovered evidence in state court and, therefore, he may not raise it here.

*Id.* at 508. Here, too, Playtex was aware, and indeed in control, of evidence concerning New Gentle Glide, and yet never sought to offer this evidence at the hearing or at any time before entry of the Court's February 6, 2008 Decision; indeed, it made a deliberate decision not to do so presumably out of concern that the evidence would be turned against it. Accordingly, it is precluded from raising the issue now.

C.    Playtex's prior position concerning "material change" is irrelevant

In its Amended Answer, Playtex pleads that "it was Playtex's position in [the prior action] that neither New Gentle Glide nor New Pearl were 'materially changed' products within the meaning of the May 2003 Injunction Order," but that Playtex "never represented to P&G that New Gentle Glide would perform similarly to Old Gentle Glide in comparison testing against New Pearl." (Weinberger Decl., Exh. M ¶ 15). Presumably Playtex will argue that since its concept of "material change" was not accepted by the Court, its current position is not inconsistent with the representations it made to the Court and to P&G.

However dubious this argument may be, Playtex's prior position concerning "material change" is irrelevant to the issue of whether the Court's February 6, 2008 Decision should be given preclusive effect. P&G sought relief from the Injunction's prohibition against advertising that Tampax Pearl provides superior protection compared to Gentle Glide. The truth of that advertising claim turned, in part at least, on whether or not Tampax Pearl did in fact provide leakage protection superior to Gentle Glide. Playtex now asserts that Gentle Glide has changed in ways that would be expected to or do in fact affect leakage protection, and therefore P&G's study may no longer be relied upon because it did not evaluate New Gentle Glide. That argument could have been raised as a defense to P&G's motion prior to this Court's Decision; the evidence on which Playtex intends to rely not only could have been discovered but in fact was known to Playtex before February 6, 2008. Whether or not the change in Gentle Glide was a "material change" under any definition of that term has nothing to do with this issue.

KL3 2653471.1

Conclusion

For the foregoing reasons, P&G respectfully requests that the Court grant its motion for summary judgment (i) on the First Claim for Relief in the Amended Complaint and declare that Playtex's attempt to challenge P&G's advertising claim of superior protection for Tampax Pearl over Gentle Glide is barred by *res judicata* and (ii) dismiss Playtex's counterclaim filed in the action.

Dated:    New York, New York
          May 1, 2008

                                    Kramer Levin Naftalis & Frankel LLP

                                    By: _____
                                        Harold P. Weinberger
                                        Jonathan M. Waganer
                                        Tobias B. Jacoby

                                    1177 Avenue of the Americas
                                    New York, New York  10036
Of Counsel:                         Telephone:  (212) 715-9100
                                    hweinberger@kramerlevin.com
Karl S. Steinmanis, Esq.            jwagner@kramerlevin.com
Travis C. Cresswell, Esq.           tjacoby@kramerlevin.com
The Procter & Gamble Company
One Procter & Gamble Plaza          Attorneys for Plaintiff
Cincinnati, Ohio  45202             The Procter & Gamble Company

- 20 -