UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE PROCTER & GAMBLE COMPANY,

*Plaintiff,*

-against-

PLAYTEX PRODUCTS, INC.,

*Defendant.*

08-cv-1532 (WHP) (THK)

Electronically Filed

**PLAYTEX'S MEMORANDUM IN OPPOSITION TO P&G'S MOTION FOR
SUMMARY JUDGMENT AND IN SUPPORT OF PLAYTEX'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

PAGE

I.  INTRODUCTION. ...................................................................................................1

II.  UNDISPUTED MATERIAL FACTS. ...................................................................4

    A.  *The Playtex I litigation.* ...........................................................................4

    B.  *The counterclaim P&G seeks to preclude arose in March 2008.* ................7

III.  APPLICABLE LEGAL STANDARDS. ...............................................................10

IV.  PLAYTEX IS NOT PRECLUDED FROM ASSERTING A NEW CLAIM THAT WAS NOT, AND COULD
NOT HAVE BEEN, BEFORE THIS COURT IN *PLAYTEX I*. ............................................11

    A.  *Playtex offered to put New Gentle Glide at issue in Playtex I, but P&G refused to do
so, claiming it could later seek additional relief based on the new product.* ........................12

    B.  *Playtex's counterclaim is predicated on facts that were not available until after this
Court's February 6, 2008 Order.* ...........................................................................14

    C.  *Playtex would have been procedurally barred from asserting its counterclaim at the
June 2007 hearing in Playtex I.* .........................................................................19

V.  CONCLUSION...........................................................................................21

## TABLE OF AUTHORITIES

PAGE

### Cases

*Agostini v. Felton*, 521 U.S. 203 (1997) ............................................................... 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................ 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................... 10

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .................................................. 20

*Computer Assoc. Int'l. v. Altai*, 126 F.3d 365 (2d Cir. 1997).................................. 10

*Guerrero v. Katzen*, 774 F.2d 506 (D. D.C. 1985) ................................................. 18

*HCC, Inc. v. R H & M Mach. Co.*, 39 F. Supp. 2d 317 (S.D.N.Y. 1999) ..................... 16

*Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86 (2d Cir. 1997) ................... 10, 15

*Legnani v. Alitalia Linee Aeree Italiane*, S.P.A., 400 F.3d 139 (2d Cir. 2005)............. 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............................................... 19, 20

*Maharaj v. Bank of Am. Corp.*, 128 F.3d 94 (2d Cir. 1997)..................................... 11, 19

*Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171 (2d Cir. 2003)..................... 10

*Pike v. Freeman*, 266 F.3d 78 (2d Cir. 2001) ....................................................... 11, 19

*SEC v. First Jersey Sec.*, Inc., 101 F.3d 1450 (2d Cir. 1996) ........................... 1, 10, 11, 13, 18, 19

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)..................................... 20

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ......................................................... 20

*Williams v. Perry*, 2000 U.S. App. LEXIS 25382, No. 00-7366 (2d Cir. 2000) ........................... 14

### Statutes

Fed. R. Civ. P. 56(c) .......................................................................................... 10

Lanham Act § 43(a), 15 U.S.C. § 1125(a) (2008)................................................. 4, 14, 16

## I.    INTRODUCTION.

P&G contends that *res judicata* bars a false advertising counterclaim that was never before this Court in *Playtex I*.[1] P&G maintains that Playtex's counterclaim is nevertheless precluded because it was not raised: (1) at a June 2007 hearing on P&G's Rule 60 motion for relief from the *Playtex I* judgment and injunction; or (2) before this Court partially granted that motion on February 6, 2008. That argument does not withstand even the most cursory scrutiny.

To begin with, undisputed evidence shows that Playtex's counterclaim is premised on recent advertisements about a new and improved Gentle Glide[2] that differs from the product at issue in *Playtex I*. Under binding Second Circuit precedent, Playtex cannot, as a matter of law, be barred from asserting its counterclaim, which arose nearly six years after the *Playtex I* complaint was filed. *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1462-64 (2d Cir. 1996) ("the scope of litigation is framed *by the complaint at the time it is filed*. The rule that a judgment is conclusive as to every matter that might have been litigated *does not apply to new rights acquired pending the action* which might have been, but … were not, required to be litigated").[3]

Despite the fact that Playtex did not have to put New Gentle Glide at issue at the post-judgment hearing in *Playtex I*, it offered to do so. It was P&G's refusal to postpone that hearing

---

[1] MEMORANDUM OF PLAINTIFF THE PROCTER & GAMBLE COMPANY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ("Opening Brief"), D.I. 35, at 7 (stating that Playtex "did not offer any evidence with respect to the purportedly new version of Gentle Glide" at the June 2007 hearing). Throughout this brief, The Procter & Gamble Company is referred to as "P&G," and defendant Playtex Products, Inc. as "Playtex." "*Playtex I*" refers to *Playtex Prods. Inc. v. The Procter & Gamble Co.*, No. 02-cv- 8046 (S.D.N.Y), which was litigated before the Honorable William H. Pauley, III.

[2] Hereinafter, "New Gentle Glide."

[3] Throughout this brief, all emphasis is added, and all internal quotations omitted, unless otherwise noted.

that made it impossible for the parties to present evidence of New Gentle Glide's comparative
leakage protection in *Playtex I*.

Faced with these inconvenient facts, P&G argues that Playtex's counterclaim should
nevertheless be barred because P&G's refusal to put New Gentle Glide at issue in *Playtex I* was
driven by Playtex's statement that New Gentle Glide was not a "materially changed" product.
That argument is unsupported by the undisputed facts. First, as P&G fully understood, Playtex's
view that New Gentle Glide was not a "materially changed" product was based on its
interpretation of paragraph 8 of the *Playtex I* injunction, which was ultimately rejected by the
*Playtex I* Court. Indeed, the changes to New Gentle Glide are at least as extensive as those made
to P&G's new Tampax Pearl,[4] which the court concluded were "significant" under the standard it
used to resolve P&G's Rule 60 motion. (Weinberger Decl., Ex. A, at *5).

Second, Playtex made it clear to both P&G and the *Playtex I* Court that New Gentle Glide
was an ***"improved product"*** whose leakage protection ***"may yield different results from the
existing tests*** between New Pearl and Old Gentle Glide." (Weinberger Decl., Exs. E & G). P&G
was well aware that it could obtain relief from the injunction under paragraph 8 only if it proved
that "(i) [*either*] of the products had materially changed, *and* (ii) that any superior leakage claim
was substantiated." (*See* Opening Brief, at 4). As P&G itself pointed out, even small changes
that were immaterial under the standard Playtex advanced at the hearing could result in a
tampon's improved absorption and leakage protection. (Abreu Decl. Ex. A, at 48:3–13, 345:6-
346:4, 349:19-350:1, 353:1-14; Edgett Decl. ¶ 14) (minor changes to the basis weight of a fiber
pad in the manufacturing process can result in increased absorption). Accordingly, regardless of
whether New Gentle Glide was "materially changed" within the meaning of paragraph 8, P&G

---

[4] Hereinafter, "New Pearl."

2

would have had to put on evidence of New Gentle Glide's *in vivo* performance to prove that claims of New Pearl's superiority were *substantiated*. Knowing this, P&G argued at that time that it would be entitled to do what it now seeks to deprive Playtex from doing: seek relief based on the new product at a later time.

Having deliberately refused to postpone the post-judgment hearing in *Playtex I* until *in vivo* testing of New Gentle Glide was completed, P&G cannot now preclude Playtex's counterclaim. This court should deny P&G's motion for summary judgment, and grant Playtex's cross-motion for summary judgment of no *res judicata* because undisputed evidence shows that:

(1) the product at issue in this case, New Gentle Glide, is a new and improved product that was not, and could not have been, at issue in *Playtex I* because P&G refused to postpone the hearing on its Rule 60 motion;

(2) the factual predicates of Playtex's counterclaim did not arise until: (a) P&G began to run, in March 2008, advertisements claiming that New Pearl protects better than New Gentle Glide; and (b) Playtex ascertained that New Pearl does *not* in fact protect better than New Gentle Glide by completing *in vivo* testing after the *Playtex I* Court ruled on P&G's Rule 60 motion; and

(3) at the June 2007 hearing on P&G's Rule 60 motion, Playtex would have lacked standing to assert – and this Court would have lacked jurisdiction over – the counterclaim P&G seeks to preclude.

3

II.    UNDISPUTED MATERIAL FACTS.

P&G seeks to preclude a counterclaim[5] that, by its own admission, was never heard by

this Court in *Playtex I*. (Opening Brief, at 1). Nor could it have been: neither the advertisements

that underpin Playtex's counterclaim, nor the evidence of their falsity, were available until after

this Court ruled on P&G's motion for relief from the judgment and injunction in *Playtex I*.

(Elkinton Decl., ¶¶ 3-4, 7-9; Finn Decl., ¶ 24).

A.    *The Playtex I litigation.*

1.    Commencement of proceedings and final judgment.

On October 9, 2002, Playtex filed *Playtex I* alleging, *inter alia*, that P&G violated § 43(a)

of the Lanham Act by launching advertisements which falsely claimed that the then-existing

version of its Tampax Pearl product ("Old Pearl") was superior to the then-existing Gentle Glide

product ("Old Gentle Glide") with respect to leakage protection, absorbency, and comfort.

(Abreu Decl., Ex. D). Following a jury verdict in Playtex's favor, this Court issued a Judgment

and Order of Permanent Injunction (the "*Playtex I* Judgment and Injunction") in May 2003,

permanently enjoining P&G from, *inter alia*, advertising that:

> (a) Tampax Pearl tampons are superior in wearing comfort or protection to
> Playtex Gentle Glide tampons … either explicitly or implicitly by reference to
> "the leading plastic" applicator tampon, and without limitation of reference to the
> use of comparative words such as "superior," "better," or "more" …
> (Weinberger Decl., Ex. B. ¶ 1).

---

[5] P&G also contends it is entitled to a declaration that Playtex is precluded from "challenging any
advertising claim by P&G that currently marketed Tampax Pearl tampons provide superior
leakage protection compared to Playtex's currently marketed Gentle Glide tampons." Opening
Brief, at 1. This brief references the alleged preclusion of Playtex's counterclaim as a shorthand
for both of P&G's preclusion allegations.

4

Paragraph 8 of the *Playtex I* Judgment and Injunction allowed P&G to make a superiority claim "only if it could establish that (i) one or both of the products had materially changed, and (ii) such a claim was substantiated." (Opening Brief, at 4; *see* Weinberger Decl., Ex. B, ¶ 8).

  2. P&G's Rule 60 motion for relief from the *Playtex I* Judgment and Injunction.[6]

On June 8, 2007, P&G moved for relief from the *Playtex I* Judgment and Injunction, arguing, *inter alia*, that New Pearl was "materially changed" and that claims of its superior leakage protection over Old Gentle Glide were "supported" within the meaning of paragraph 8 of the injunction. (Abreu Decl., Ex. B, at 22). To persuade the court that it should no longer be bound by the *Playtex I* Judgment and Injunction, P&G emphasized that the injunction was "based on proof offered by Playtex concerning a product that is not the same as the product now marketed by P&G." (Abreu Decl., Ex. B, at 14). P&G also represented that "in the event Playtex believes future advertising claims made by P&G are false, Playtex is free to pursue its Lanham Act remedies, as it has done in the past." (Abreu Decl., Ex. B, at 18).

  3. P&G's refusal to postpone the hearing on its Rule 60 motion.

Before P&G filed its Rule 60 motion, Playtex advised P&G that it was in the process of developing and launching a modified and improved product, New Gentle Glide. (Weinberger Decl., Ex. D). The parties did not conduct any discovery on New Gentle Glide's leakage protection compared to New Pearl, either before or after P&G filed its Rule 60 motion. (*See* Weinberger Decl., Ex. F). In a letter dated June 1, 2007, counsel for Playtex wrote to counsel for P&G emphasizing that "a newly fielded [comparative] test between New Pearl and New Gentle Glide *may yield different results from the existing tests* between New Pearl and Old Gentle

---

[6] "Rule __" refers to the corresponding Federal Rule of Civil Procedure.

5

Glide. We are simply not in a position to know *a priori*. Therefore, Playtex will not stipulate that the results will be the same." (Weinberger Decl., Ex E).

Since such a test would have been required for P&G to prove that any claims of superiority over New Gentle Glide were "supported" within the meaning of paragraph 8 of the *Playtex I* Judgment and Injunction, Playtex offered "to postpone the hearing until such time as P&G has the ability to analyze the product and to conduct any testing it deems appropriate." (Weinberger Decl., Ex E). P&G refused and stated that it would not be precluded from "seeking additional relief from the injunction based on New Gentle Glide" because there was insufficient time to test the new product prior to the June hearing. (Weinberger Decl., Ex. F).

    4.   <u>The June 2007 hearing on P&G's Rule 60 motion.</u>

At P&G's persistence, the parties proceeded with the hearing on June 19-21, 2007. In its pre-hearing memorandum, Playtex advised the Court that it had offered to postpone the hearing to enable the parties to test New Gentle Glide and put it at issue at the hearing, but P&G declined to do so. Playtex also alerted the Court that although in its view "New Gentle Glide is not a 'materially changed' product ***under the Injunction Order***," it was "***an improved*** product." (Weinberger Decl., Ex. G).

The June 2007 hearing focused only on whether the *Playtex I* Judgment and Injunction should be vacated or clarified with respect to P&G's claims that New Pearl was superior in leakage protection to Old Gentle Glide. (Abreu Decl., Ex. B, at 22). No evidence concerning New Gentle Glide's performance as compared to New Pearl was presented at the hearing. (Abreu Decl., Ex. B, at 1 n. 1). Indeed, no such evidence could have been presented because, at the time of the hearing: (1) neither party had conducted any *in vivo* testing comparing New

6

Gentle Glide to New Pearl; and (2) New Gentle Glide had yet to penetrate the market in quantities sufficient to provide a representative sample for an *in vivo* test. (Finn Decl., ¶¶ 7, 11).

> 5.    *Vacatur* of the *Playtex I* Judgment and Injunction.

On February 6, 2008, the *Playtex I* court partially granted P&G's Rule 60 motion and directed the parties to submit a joint proposed amended injunction order. (Weinberger Decl., Ex. A). The parties stipulated to a *vacatur* of the *Playtex I* Judgment and Injunction. On April 1, 2008, the Court entered an order vacating the *Playtex I* Judgment and Injunction in its entirety. (Weinberger Decl., Ex. K).

**B.    The counterclaim P&G seeks to preclude arose in March 2008.**

The counterclaim P&G seeks to preclude is predicated on two key facts: (1) P&G's launch, beginning in March 2008, of an advertising campaign claiming that New Pearl protects better than New Gentle Glide; and (2) results from an *in vivo* test showing that these claims are false. Neither fact existed when *Playtex I* was litigated.

> 1.    New Gentle Glide is a different product from that at issue in *Playtex I.*

By P&G's own admission, *Playtex I* concerned advertising comparisons between Tampax Pearl and Old Gentle Glide. (Opening Brief, at 7; P&G's Statement Pursuant to Local Rule 56.1 ("P&G Rule 56.1 Statement"), ¶ 27). New Gentle Glide – the product at issue in this case – is a new and improved product that differs from Old Gentle Glide with regard to the crucial legally relevant feature: leakage protection. (Edgett Decl., ¶ 10).

Playtex invested $3.99 million to develop New Gentle Glide, which was first launched on May 25, 2007. (Edgett Decl., ¶ 3). New Gentle Glide's pledget differs from that of Old Gentle Glide in ▮▮▮▮▮▮ REDACTED ▮▮▮▮▮▮



*(Id. ¶ 6).*

*(Id. ¶ 7).*

*In vitro* testing confirmed that New Gentle Glide has REDACTED and improved fluid displacement, which result in the product's improved leakage protection over Old Gentle Glide. (*Id.* ¶¶ 9-11). Indeed, New Gentle Glide was sufficiently different from Old Gentle Glide to require the filing of a 510(k) pre-market notification notice with the Food and Drug Administration ("FDA"). (*Id.* ¶ 12). By the end of 2007, New Gentle Glide was the only Gentle Glide product on the market. (*Id.* ¶ 13).

> **2.    In March 2008, P&G launched an advertising campaign falsely claiming that New Pearl protects better than New Gentle Glide.**

On or about March 3, 2008, P&G began: (1) airing television advertisements falsely asserting that its New Pearl plastic tampons "protect even better than the next leading brand"; and (2) running a print advertisement claiming that "Women choose Tampax 2 to 1 ... The tampon with unique built-in backup protection." (Elkinton Decl., ¶ 4 and Ex. A). In March 2008, New Gentle Glide was, and continues to be, "the next leading brand." (Elkinton Decl., ¶ 6). Playtex first became aware of these advertisements on March 4, 2008. (*Id.* ¶ 5). Since then, P&G launched further false advertisements in April, May, and June 2008 (collectively with the March 2008 ads, the "Spring 2008 Ad campaign"). (*Id.* ¶¶ 7-9).

> **3.    Playtex ascertained that New Pearl does *not* in fact protect better than New Gentle Glide after the *Playtex I* Court ruled on P&G's Rule 60 motion.**

Although Playtex commissioned an *in vivo* test comparing the leakage protection of New Gentle Glide with that of New Pearl as soon as logistically feasible following the introduction of New Gentle Glide to the market, it did not obtain the results from that test until after the *Playtex I* Court ruled on P&G's Rule 60 motion. (Finn Decl., ¶¶ 3, 24). While New Gentle Glide was

released on May 25, 2007, the product did not penetrate the market in sufficient quantities to support a reliable *in vivo* test until August 27, 2008. (*Id.* ¶ 7). Shortly thereafter, Playtex began collecting representative samples of New Gentle Glide and New Pearl from retail outlets throughout the nation. (*Id.* ¶¶ 9-10).

Once these samples were collected, Guideline, the independent agency retained by Playtex to conduct the *in vivo* test, undertook the following steps necessary to field the test: (a) develop a protocol for the test; (b) recruit volunteers to participate in the test; (c) wait for the volunteers to undergo a menstrual cycle; (d) collect the raw data from the volunteers after they used the product during their menstrual cycles; and (e) compile the raw data returned by the volunteers. (*Id.* ¶ 11). In addition, an independent third party contacted the volunteers to validate the reported results. (*Id.* ¶ 19). In late January 2008, Guideline forwarded a preliminary analysis of the validated raw data, consisting of frequency counts of reported leakage, to Playtex. (*Id.* ¶¶ 21-23).

Such data could not, however, meaningfully establish New Gentle Glide's performance as compared to New Pearl absent a statistical analysis. (Finn Decl., ¶ 23; Abreu Decl., Ex. A, at 440:1 – 442:7). Accordingly, on the same day it received Guideline's preliminary report, Playtex forwarded the data to a statistician for analysis. (Finn Decl., ¶ 23). Statistical analysis was completed on February 18, 2008. (*Id.* ¶ 24). This was the first date on which Playtex ascertained the falsity of any claims of superiority of New Pearl over New Gentle Glide with respect to leakage protection. (*Id.*). Given that this timing is consistent with that of similar *in vivo* tests, that falsity could not have been ascertained at an appreciably earlier date. (*Id.* ¶ 25).

III.    APPLICABLE LEGAL STANDARDS.

Summary judgment is warranted where, as here, there is no genuine issue of material fact

and the cross-moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is not "genuine" unless "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While the court must construe all

evidence in the light most favorable to the non-moving party, the non-moving party may not rely

solely on "[c]onclusory allegations, conjecture, and speculation." *Niagara Mohawk Power Corp.*

*v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Because P&G has the burden of proof on

the issue of *res judicata*, "the plain language of Rule 56(c) mandates the entry of summary

judgment... against [P&G if it] fails to make a showing sufficient to establish the existence of an

element essential to" that claim. *Celotex*, 477 U.S. at 322-23; *see Computer Assoc. Int'l. v. Altai*,

126 F.3d 365, 369 (2d Cir. 1997) (party invoking *res judicata* bears the burden of proving that

the doctrine bars the second action).

P&G cannot establish *res judicata*, also known as claim preclusion, unless it can prove

that: (1) the order alleged to have preclusive effect was a final judgment on the merits of the prior

action; (2) the prior action was between the same parties or their privities; and (3) Playtex's

counterclaim was, or could have been, raised in the prior action. *Interoceanica Corp. v. Sound*

*Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997); *SEC*, 101 F.3d at 1463. "[T]he fact that both suits

involved essentially the same course of wrongful conduct is not decisive ... nor is it dispositive

that the two proceedings involved the same parties, similar or overlapping facts, and similar legal

issues." *SEC*, 101 F.3d at 1463. Rather, a "first judgment will generally have preclusive effect

only where ... the same evidence is needed to support both claims, and where the facts essential

to the second were present in the first." *Id.* at 1463-64.

Accordingly, "[a]s a matter of logic, when the second action concerns a transaction

occurring after the *commencement* of the prior litigation ... [the new claims] are not barred by *res*

*judicata* regardless of whether they are premised on facts representing a continuance of the same

course of conduct." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 400 F.3d 139, 141 (2d Cir.

2005); *accord Maharaj v. Bank of Am. Corp.*, 128 F.3d 94, 97-98 (2d Cir. 1997) (reversing a

district court's ruling that claims were barred by *res judicata* where claims arose out of an event

that occurred after the filing of the complaint, but before trial, in the first case).

## IV.     PLAYTEX IS NOT PRECLUDED FROM ASSERTING A NEW CLAIM THAT WAS NOT, AND COULD NOT HAVE BEEN, BEFORE THIS COURT IN *PLAYTEX I*.

It is axiomatic that *res judicata* does not bar recovery unless the claim at issue in the

second action was actually litigated, or could have been raised, in the first case. *Pike v. Freeman*,

266 F.3d 78, 91 (2d Cir. 2001). P&G seeks to preclude a claim that, by its own admission, was

never heard by this Court in *Playtex I*.[7] (Opening Brief, at 7; P&G Rule 56.1 Statement, ¶ 27).

P&G's *res judicata* claim therefore fails unless it can show that Playtex's counterclaim

"could have been raised" in *Playtex I*. To meet this burden, P&G advances two primary

arguments. First, it disingenuously contends that "Playtex made a tactical decision not to raise

the allegedly altered Gentle Glide product" at the June 2007 hearing. (Opening Brief, at 3).

Second, P&G argues that Playtex "could have" raised New Gentle Glide's leakage protection

---

[7] The Opening Brief's reference to the "brief appearance at the [June 2007] hearing" of "a box of New Gentle Glide," see Opening Brief at 7 n.1, does not create a genuine dispute about the fact that no evidence was ever presented to the *Playtex I* court on whether New Pearl protects better than New Gentle Glide. Moreover, any "reasonable doubt as to what was decided in the first action should preclude the drastic remedy of foreclosing a party from litigating an essential issue." *Legnani*, 400 F.3d at 142.

attributes "as a defense to P&G's [Rule 60] motion" in *Playtex I*, and that its failure to do so

precludes it from asserting its counterclaim in this case. (Opening Brief, at 3). Both arguments

fail as a matter of fact and law.

A.    *Playtex offered to put New Gentle Glide at issue in Playtex I, but P&G refused to do so, claiming it could later seek additional relief based on the new product.*

It is disingenuous for P&G to argue that Playtex could have raised New Gentle Glide's

increased leakage protection as a "defense" to P&G's Rule 60 motion. To begin with, it was not

Playtex's burden to put New Gentle Glide at issue at the June 2007 hearing. Rather, P&G had

the burden to prove that it was entitled to the relief it sought because: (1) there was a significant

change in circumstances since the *Playtex I* Judgment and Injunction issued; or (2) its superior

leakage claim was permissible under paragraph 8 of the injunction because "(i) one or both of the

products had materially changed, and (ii) [the claim] was substantiated." (Opening Brief, at 4;

*see* Weinberger Decl., Ex. B, ¶ 8); *see Agostini v. Felton*, 521 U.S. 203, 215 (1997).

Far from making a "tactical decision not to raise" New Gentle Glide at the June 2007

hearing, Playtex offered to "postpone the hearing until such time as P&G has the ability to

analyze the [New Gentle Glide] product and to conduct any testing it deems appropriate."

(Opening Brief, at 3; Weinberger Decl., Ex. E). Indeed, Playtex explicitly warned P&G that such

postponement would be advisable because:

> a newly fielded test between New Pearl and New Gentle Glide *may yield different results* from the existing tests between New Pearl and Old Gentle Glide. We are simply not in a position to know *a priori*. Therefore, *Playtex will not stipulate that the results will be the same*. (Weinberger Decl., Ex. E).

P&G nevertheless persisted on "proceed[ing] with the hearing as scheduled," claiming it

would not later be "precluded from seeking additional relief from the injunction based on new

Gentle Glide." (Weinberger Decl., Ex. F). P&G's claim that it was dissuaded from postponing

the hearing by Playtex's prior position that New Gentle Glide – and New Pearl – were not "materially changed" products within the meaning of the *Playtex I* injunction is a red herring. First, it is demonstrably false. P&G fully understood that it could obtain relief under paragraph 8 of the *Playtex I* Judgment and Injunction only if it proved that "(i) [*either*] of the products had materially changed, *and* (ii) [that the superior leakage claim] was substantiated." (Opening Brief, at 4). Playtex's position on whether New Gentle Glide was a "materially changed" product says nothing about whether a claim of superiority would be *substantiated*. To meet that second requirement of the *Playtex I* Judgment and Injunction, P&G would have had to put forth *in vivo* test results showing that New Pearl protects better than New Gentle Glide. P&G was, and continues to be, demonstrably aware of that distinction. (*Id.*; Weinberger Decl., Ex. D) (asking for Playtex's position on "whether this is a materially changed version of Gentle Glide ... *and* whether you are going to contend that testing done on the current version of Gentl[e] Glide is no longer relevant to this product."). Second, even immaterial changes to a product can result in substantial increases in its absorption and leakage protection – thus making any superiority claims unsubstantiated under paragraph 8. (Edgett Decl. ¶ 14). Third, P&G's newly embraced ignorance of this distinction is legally irrelevant to the *res judicata* inquiry. *See SEC*, 101 F.3d at 1463 (party's subjective belief is not one of the elements of *res judicata*).

P&G's refusal to postpone the hearing ensured that the parties could not present results from *in vivo* tests comparing the leakage protection of New Gentle Glide and New Pearl to the *Playtex I* Court. (Finn Decl., ¶¶ 11,15, 17-25). In "proceed[ing] with the hearing as scheduled" (Weinberger Decl. Ex. F) without that evidence, P&G represented to this Court that:

"Playtex will suffer no prejudice if the Court grants the relief P&G seeks.  In the event Playtex believes future advertising claims made by P&G are false, *Playtex is free to pursue its Lanham Act remedies, as it has done in the past.*"  (Abreu Decl., Ex. B, at 18).

It is rather cheeky for P&G to now argue – after claiming that *it* would get a second chance to "seek[] additional relief based on new Gentle Glide" – that Playtex cannot have its day in court on a new claim that, less than one year ago, P&G told this court Playtex would be "free to pursue."  (Weinberger Decl., Ex. F; Abreu Decl., Ex. B, at 18).

**B.**    ***Playtex's counterclaim is predicated on facts that were not available until after this Court's February 6, 2008 Order.***

To invoke a *res judicata* bar where there is none, P&G contends that all facts and evidence arising prior to this Court's February 6, 2008 Decision can be used to show that the "same claim" asserted by Playtex here could have been placed at issue in *Playtex I*.  (Opening Brief, at 16).  P&G reasons that "Playtex could have sought to reopen the record" after the June 2007 hearing and therefore can be fairly precluded from asserting its counterclaim in this case.  (Opening Brief, at 17).  This argument fails as a matter of fact and law.

**1.**    The false advertisements underlying Playtex's counterclaim were first launched in March 2008.

Undisputed evidence shows that Playtex could not have raised its counterclaim in *Playtex I* because the facts that underlie it did not fully arise until at least March 2008.  Playtex's counterclaim, which asserts a violation of § 43(a) of the Lanham Act, is predicated on TV and print advertisements that P&G ran in March, April, May and June 2008 claiming, *inter alia*, that New Pearl protects better than the "next leading brand."  (Elkinton Decl., ¶¶ 4, 7-9).  At that time, New Gentle Glide was, and continues to be, the "next leading brand."  (*Id.* ¶ 6).  These facts alone defeat a *res judicata* bar.  *Williams v. Perry*, No. 00-7366, 2000 U.S. App. LEXIS

14

25382, at *11 (2d Cir. Oct. 6, 2000) ("*Res judicata* will not bar a suit based upon legally

significant acts occurring after the filing of a prior suit"); *Interoceanica*, 107 F.3d at 90-91 (*res*

*judicata* does not bar a claim whose factual predicates are not "related in time, space, origin" to

the facts at issue in the first case).

> 2.    New Gentle Glide differs from the product at issue in *Playtex I*.

Undisputed evidence demonstrates that the product at issue in this case, New Gentle

Glide, is an improved product that protects against leakage better than the Old Gentle Glide that

was at issue in *Playtex I*. (Edgett Decl., ¶ 10). As discussed above, Playtex invested $3.99

million to develop New Gentle Glide, which resulted in the product's improved leakage

protection. (*Id.* ¶ 3).

*In vitro* testing comparing New Gentle Glide's leakage protection to that of Old Gentle

Glide confirmed that the changes to New Gentle Glide resulted in ███ REDACTED ███

and improved fluid displacement. (*Id.* ¶ 9). This in turn leads to New Gentle Glide's improved

performance over Old Gentle Glide with regard to leakage protection. (*Id.* ¶ 10).

The changes to New Gentle Glide were sufficiently significant to warrant the submission

of a 510(k) pre-market notification to the FDA. (*Id.* ¶ 12). While the clearance of New Gentle

Glide's 510(k) entails a finding of "substantial equivalence" to the predicate device, such a

finding does not – in the words of P&G's own expert on the FDA regulatory scheme – "indicate

that a design change has not occurred." (Abreu Decl., Ex. A, at 494:1-3). Quite the contrary: "if

a design change did occur, there could be an impact on leakage protection." (*Id.*).

In contrast, the changes P&G made in developing New Pearl did not even require the

submission of a 510(k) pre-market notification to the FDA. (Abreu Decl., Ex. C). While the

current inquiry is not constrained by the legal standards employed to interpret or lift the *Playtex I*

Judgment and Injunction, it is still instructive that New Gentle Glide was changed to an even greater degree than a product that was found by the *Playtex I* Court to be significantly different from its predecessor. (Weinberger Decl., Ex. A, at \*5).

The undisputed evidence of these changes and *in vitro* test results demonstrates that New Gentle Glide differs from, and is an improvement over, Old Gentle Glide with regard to the key legally relevant attribute of leakage protection. This further supports the conclusion that *res judicata* does not bar Playtex's counterclaim. *See HCC, Inc. v. R H & M Mach. Co.*, 39 F. Supp. 2d 317, 324 (S.D.N.Y. 1999) (*res judicata* did not bar second suit involving a different product from that at issue in the first suit).

> 3. Playtex did not ascertain the falsity of claims that New Pearl protects better than New Gentle Glide until after the *Playtex I* Court ruled on P&G's Rule 60 motion.

Nor was Playtex able to ascertain that New Pearl does not, in fact, protect better than New Gentle Glide until after the *Playtex I* Court's February 6, 2008 decision on P&G's Rule 60 motion. While Playtex had conducted, prior to the June 2007 hearing, an *in vitro* test that showed New Gentle Glide protects better than Old Gentle Glide, that *in vitro* test alone could not support Playtex's current counterclaim. Rather, Playtex's counterclaim must be supported by evidence demonstrating that P&G's Spring 2008 Ad campaign, which claims that New Pearl is superior to New Gentle Glide in leakage protection, is false or misleading. *See* 15 U.S.C. § 1125(a) (2008); (Amended Answer, Counterclaim ¶¶ 10-14). Playtex was not, and could not have been, in possession of an *in vivo* test comparing New Gentle Glide's leakage protection to that of New Pearl in time for the June 2007 hearing. (Finn Decl., ¶¶ 11-25).

Undisputed evidence shows that New Gentle Glide was not even available in the market in quantities sufficient to conduct a reliable *in vivo* test until August 27, 2007 – over two months

16

*after* the June 2007 hearing. (Finn Decl., ¶¶ 7-8). P&G itself foreshadowed this problem when it

stated, in its June 6, 2007 letter, that:

> given that new Gentle Glide is not presently available and that, at the earliest, the
> product will become available in reasonable quantities in the marketplace
> sometime later this summer – at which point P&G would first have to analyze and
> test the product – we do not agree that P&G will be precluded from seeking
> additional relief from the injunction based on new Gentle Glide, if appropriate.
> (Weinberger Decl., Ex. F).

As P&G predicted, it did in fact take time to analyze and test New Gentle Glide against

New Pearl after New Gentle Glide became available "in reasonable quantities in the

marketplace." (Weinberger Decl., Ex. F; Finn Decl., ¶¶ 11-25). Despite Playtex's seasonable

commission of an *in vivo* test, it took several months to: (a) construct a reliable protocol for *in

vivo* testing; (b) recruit volunteers to participate in the test; (c) wait for the volunteers to undergo

a menstrual cycle; (d) collect the raw data from the volunteers after they used the test products in

the regular course of their menstrual cycles; (e) compile the raw data returned by the volunteers;

(f) validate the data by having an independent third party contact the volunteers; (g) conduct a

preliminary analysis, in the form of a frequency count, of the validated raw data; and (h) conduct

a statistical analysis of the validated data. (Finn Decl., ¶¶ 11-25). As a result, Playtex first

obtained a statistical analysis of the *in vivo* test results on February 18, 2008. (*Id.* ¶ 24). As P&G

stated in its cross-examination of a Playtex witness at the June 2007 hearing, *in vivo* test results

"mean[] nothing" unless statistically analyzed. (Abreu Decl., Ex. A, at 440:1-442:7).

Undisputed evidence also shows that Playtex could not have obtained the above

referenced *in vivo* test results and statistical analysis much earlier than February 18, 2008 – and

certainly not in time for the June 2007 hearing. (Finn Decl., ¶¶ 11-25). Because statistically

analyzed *in vivo* test results are essential to ascertain and establish the falsity of P&G's Spring

17

2008 Ad campaign, their unavailability at the time of the June 2007 hearing defeats P&G's *res judicata* contention as a matter of law. *See SEC*, 101 F.3d at 1463-64 (new claim is not precluded unless "the same evidence is needed to support both claims, and … the facts essential to the second were present in the first.").

    4.    Binding Second Circuit precedent rejects the notion, advanced by P&G, that *res judicata* bars any claim "that Playtex could have offered in the prior action up until the time of a final decision in the action."

P&G's *res judicata* claim cannot be salvaged by its theory that "Playtex could have sought to reopen the record" and introduce *in vivo* studies comparing New Gentle Glide and New Pearl's leakage protection through the day this Court issued its February 6, 2008 Decision. The case upon which P&G relies for that proposition, *Guerrero v. Katzen*, 774 F.2d 506 (D.C. Cir. 1985) is unavailing. (Opening Brief, at 18). To begin with, *Guerrero* is factually distinguishable and does not, as P&G contends, support preclusion in this case. While some new evidence had allegedly sprung forth at the *fourth* action instituted by Guerrero over the same dispute, Guerrero's claim in the fourth action arose "from the *identical* definable factual transaction" that underlay the prior cases. *Guerrero*, 774 F.2d at 507-08. In contrast, Playtex's counterclaim stems from TV and print advertisements launched in March through June 2008, which make false claims of superiority over a New Gentle Glide product that was never at issue, and could not have been put at issue, in *Playtex I*.

More importantly, over ten years after *Guerrero* was decided, the Second Circuit flatly rejected the notion – critical to P&G's *res judicata* theory – that "a claim that arose after a suit was commenced but prior to judgment is barred by *res judicata*." *SEC*, 101 F.3d at 1465. Rather, "the scope of litigation is framed *by the complaint at the time it is filed*. The rule that a judgment is conclusive as to every matter that might have been litigated *does not apply to new*

*rights acquired pending the action* which might have been, but which were not, required to be

litigated." *Id.* at 1462-64 (*res judicata* did not bar second claim of fraudulent trading where

trades at issue did not occur until after the hearing, but before entry of the final judgment, in the

first action). P&G does not argue that New Gentle Glide or the Spring 2008 Ad campaign – both

factual predicates to Playtex's counterclaim – existed when the complaint was filed in *Playtex I*

in 2002. Indeed, the facts and evidence upon which Playtex's counterclaim is predicated were

not even available at the June 2007 hearing on P&G's motion to vacate the *Playtex I* Judgment

and Injunction. Under the Second Circuit's binding view, P&G's *res judicata* claim therefore

fails as a matter of law. *Id.; see Maharaj*, 128 F.3d at 96-97 (reversing district court's ruling that

claims were barred by *res judicata* where they arose from an event that occurred after the

complaint was filed, but before trial, in the first case).

> **C.**    ***Playtex would have been procedurally barred from asserting its counterclaim at
> the June 2007 hearing in Playtex I.***

The Second Circuit has admonished that a claim is not barred where "the applicable

procedural rules did not permit [its] assertion … in the first action." *Pike*, 266 F.3d at 91. That

is exactly the case here. Even if Playtex could have garnered *in vivo* test results on New Gentle

Glide in time for the June 2007 hearing, it would not have been permitted to assert its current

counterclaim in *Playtex I*. The reason is simple: back in June 2007, Playtex would have lacked

standing to assert its counterclaim, and this Court would have lacked jurisdiction to hear it under

Article III of the U.S. Constitution.

The Supreme Court has repeatedly held that a party lacks standing to assert a claim for

prospective relief unless it is under an actual and imminent threat of being injured. *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In June 2007, P&G did not have current ads

making specific false comparisons between New Pearl and New Gentle Glide. Indeed, at that time, Playtex had no reasonable apprehension that P&G would do so, since P&G was broadly enjoined from making any explicit or implicit claims that "Tampax Pearl" protects better than "Playtex Gentle Glide." (Weinberger Decl., Ex. B, ¶ 1).

Accordingly, at the time of the June 2007 hearing, Playtex's counterclaim would have been premised on an allegation that it *could* be injured *if* all of the following came to pass: (1) the Court lifted the *Playtex I* Judgment and Injunction in its entirety (rather than modify it, based on evidence presented at the June 2007 hearing, to allow P&G to make substantiated claims comparing New Pearl to Old Gentle Glide); and (2) P&G, at some unspecified date in the remote future, made advertising claims that (3) would break the law by containing false statements about New Pearl's superior protection relative to a New Gentle Glide product that had barely hit the market. This is precisely the type of remote, conjectural injury that the Supreme Court decreed insufficient to establish standing. *See Lujan*, 504 U.S. at 564 & n. 2 (threat of harm "at some indefinite future time" does not support standing); *Whitmore v. Arkansas*, 495 U.S. 149, 159-60 (1990) (threat of harm based on speculations "that the judicial system will lead to any particular result" insufficient to support standing); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983) (no standing where threat to plaintiff was based on a hypothesis that defendant might again violate the law). Under the Supreme Court's view, Playtex would have likely lacked standing to assert its counterclaim until this Court lifted the *Playtex I* injunction and Playtex had concrete evidence that P&G was about to run false advertisements concerning New Gentle Glide.

Until that time, this Court would have also lacked Article III jurisdiction over Playtex's counterclaim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (standing is a "threshold jurisdictional question" under Article III); *Whitmore*, 495 U.S. at 158, 161

20

("Allegations of possible future injury do not satisfy the requirements of Article III," which implicates "the constitutional source of federal judicial power itself"). Since Playtex's counterclaim could not possibly have been sued upon in the previous case, it cannot, as a matter of law, be precluded.

**V.    CONCLUSION.**

For the foregoing reasons, Playtex's cross-motion for summary judgment should be granted, and P&G's motion for summary judgment should be denied.

Dated:  May 30, 2008          DAVIS POLK & WARDWELL

                             By:

                                Veronica C. Abreu (*pro hac vice*)

                                Matthew B. Lehr (ML-9982)
                                Sasha E. Polonsky (SP-0422)
                                450 Lexington Avenue
                                New York, NY 10017
                                Telephone: (212) 450-4000
                                Facsimile: (212) 450-3800

                                Anthony I. Fenwick (*pro hac vice*)
                                David J. Lisson (*pro hac vice*)
                                1600 El Camino Real
                                Menlo Park, CA 94025
                                Telephone: (650) 752-2000
                                Facsimile: (650) 752-2111

                                *Attorneys for Defendant Playtex Products,*
                                *Inc.*