UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

THE PROCTER & GAMBLE COMPANY,

          Plaintiff,

  - against -

PLAYTEX PRODUCTS, INC.,

          Defendant.

----------------------------------------x

1:08-CV-01532 (WHP) (THK)

DEFENDANT PLAYTEX PRODUCTS, INC.'S STATEMENT PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF ITS OPPOSITION TO P&G's MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

Electronically Filed

      Pursuant to Rule 56.1 of the Local Rules of Civil Procedure of the United States District Courts for the Southern and Eastern Districts of New York, and in support of its opposition to the Procter & Gamble Company ("P&G")'s motion for summary judgment and cross-motion for summary judgment, Defendant Playtex Products, Inc. ("Playtex") submits the following statement of material facts.

      **Playtex's Response To P&G's Statement Pursuant To Local Rule 56.1**

    1.    Admitted.

    2.    Admitted.

    3.    Admitted.

    4.    Admitted.

    5.    Admitted.

6.  Admitted that P&G developed and launched a purportedly new and improved version of Tampax Pearl ("New Pearl").

7.  Admitted that P&G conducted testing of New Pearl that included comparative testing against the version of the Gentle Glide product previously on the market ("Old Gentle Glide"). Admitted that P&G's *in vitro* testing purported to show improvements between Old Pearl and New Pearl. Admitted that P&G's *in vivo* and *in vitro* testing purported to show that (1) New Pearl was an improvement over Old Pearl; and (ii) New Pearl provided superior protection when compared to Old Gentle Glide. Denied that P&G's comparative testing compared New Pearl to the version of Gentle Glide that is currently on the market ("New Gentle Glide"). (Abreu Decl., Ex. B, at 1 & n. 1) (stating that the New Gentle Glide "product is not yet in the marketplace and P&G has not had any opportunity to analyze or test it.").

8.  Admitted that, on June 8, 2007, P&G moved for relief from the Judgment and Order of Permanent Injunction, dated May 29, 2003 (the "*Playtex I* Judgment and Injunction"), in case No. 02-civ-8046 ("*Playtex I*") on the ground that changes to the leakage protection performance of New Pearl relative to Old Pearl and Old Gentle Glide constituted a "significant change in factual circumstances" under Fed. R. Civ. P. 60(b)(5). Admitted that P&G asked, in the alternative, that the Court find that a claim that New Pearl provides superior leakage protection compared to Old Gentle Glide fell within the scope of and was permitted by paragraph 8 of the *Playtex I* Judgment and Injunction. Denied that P&G made any request related to New Gentle Glide in the June 8, 2007 motion or at the June 2007 hearing on that motion. (Abreu Decl., Ex. B, at 1 & n. 1)

(stating that the New Gentle Glide "product is not yet in the marketplace and P&G has not had any opportunity to analyze or test it.").

9.  Admitted that prior to the June 8, 2007 motion, the parties conducted discovery concerning Old Gentle Glide and New Pearl. Admitted that this discovery focused on the changes that had been made to Tampax Pearl tampons, testing between New Pearl and Old Pearl, and testing between New Pearl and Old Gentle Glide. Denied that the parties conducted discovery concerning New Gentle Glide. (Abreu Decl., Ex. B, at 1 & n. 1) (stating that the New Gentle Glide "product is not yet in the marketplace and P&G has not had any opportunity to analyze or test it.") (Finn Decl., ¶ 11) ("At the time of the hearing, Playtex had not yet conducted any *in vivo* testing comparing the leakage protection of New Gentle Glide to New Pearl. Nor could it have done so.").

10. Admitted that the Court conducted a three-day evidentiary hearing on June 19-21, 2007 in *Playtex I*, that ten witnesses testified, that the parties presented documentary evidence, and that the parties submitted pre- and post-trial written submissions. Admitted that each side introduced into evidence leakage protection studies comparing New Pearl and Old Gentle Glide. Denied that any party introduced evidence comparing the leakage protection of New Pearl to New Gentle Glide. (Abreu Decl., Ex. B, at 1 & n. 1) (stating that the New Gentle Glide "product is not yet in the marketplace and P&G has not had any opportunity to analyze or test it.") (Finn Decl., ¶ 11) ("At the time of the hearing, Playtex had not yet conducted any *in vivo* testing comparing the leakage protection of New Gentle Glide to New Pearl. Nor could it have done so.").

11. Admitted that, before P&G filed its motion to vacate or clarify, Playtex advised P&G that it was developing New Gentle Glide. Admitted that counsel for P&G

sent an email dated May 18, 2007, to counsel for Playtex regarding New Gentle Glide. The email reads:

> Thanks for promptly advising me of Playtex's decision. I will await your advice as to how soon you will be able to provide us the product in quantities requested in my e mail of yesterday. I would also like to know how soon the product will be on the shelves and how it will be characterized in Playtex's advertising and promotion. Finally you will need to tell me in writing what Playtex's position is going to be as to whether this a [sic] a materially changed version of Gentle Glide (as your prior advice on this has been informal) <u>and whether you are going to contend that the testing done on the current version of Gentl [sic] Glide is no longer relevant to this product</u>. (Weinberger Decl., Ex. D) (emphasis added).

12. Admitted that counsel for Playtex responded to P&G's May 18, 2007 email in a letter dated June 1, 2007, and that a true and accurate copy of that letter was attached as Exhibit E to the Declaration of Harold P. Weinberger. The document speaks for itself.

13. Denied that P&G relied on any Playtex representations when it determined not to seek to test New Pearl against New Gentle Glide and to proceed with the hearing. (Weinberger Decl., Ex. E) ("it is Playtex's position that a newly fielded test between New Pearl and New Gentle Glide may yield different results from the existing tests between New Pearl and Old Gentle Glide. We are simply not in a position to know *a priori*. Therefore, Playtex will not stipulate that the results will be the same."). Admitted that P&G responded to Playtex's letter on June 6, 2007, and that a true and correct copy of P&G's June 6, 2007 response is attached to the Declaration of Harold P. Weinberger as Exhibit F. Otherwise denied.

14. Admitted that Playtex submitted a pre-hearing memorandum in *Playtex I* on or about June 8, 2007, and that a true and correct copy of an excerpt from that

4

memorandum is attached as Exhibit G to the Declaration of Harold P. Weinberger. Denied that the quoted statement constitutes a representation concerning New Gentle Glide's leakage protection performance compared to New Pearl. (Weinberger Decl., Ex. D) ("it is Playtex's position that a newly fielded test between New Pearl and New Gentle Glide may yield different results from the existing tests between New Pearl and Old Gentle Glide. We are simply not in a position to know *a priori*. Therefore, Playtex will not stipulate that the results will be the same.").

15. Admitted that Playtex had developed, and begun shipping, New Gentle Glide at the time of the June 2007 hearing. Otherwise denied. (Finn Decl., ¶ 7).

16. Admitted that, prior to the June 2007 hearing in *Playtex I*, packaging for New Gentle Glide was produced, which packaging speaks for itself. Otherwise denied.

17. Admitted that, at the June 2007 hearing and in its post-hearing submissions, Playtex challenged the adequacy of P&G's *in vivo* study comparing the leakage protection of New Pearl and Old Gentle Glide. Denied that Playtex made any arguments challenging any study comparing the leakage protection of New Pearl and New Gentle Glide, since no such study was presented to the *Playtex I* Court. Otherwise denied. (Abreu Decl., Ex. B, at 1 & n. 1) (stating that the New Gentle Glide "product is not yet in the marketplace and P&G has not had any opportunity to analyze or test it.") (Finn Decl., ¶ 11) ("At the time of the hearing, Playtex had not yet conducted any *in vivo* testing comparing the leakage protection of New Gentle Glide to New Pearl. Nor could it have done so.").

18. Admitted that Playtex had begun selling New Gentle Glide by August 2007. (Edgett Decl., ¶ 13).

5

19.     Admitted that Playtex issued a press release dated August 31, 2007, which document speaks for itself.

20.     Admitted that the Court issued a decision in *Playtex I* on February 6, 2008, which document speaks for itself.  Further admitted that the Clerk of the Court entered that decision onto the docket, and that the Court amended that Decision on February 11, 2008.  Admitted that a true and correct copy of the February 11, 2008 amended decision is attached as Exhibit A to the Declaration of Harold P. Weinberger. (Weinberger Decl., Ex. A).

21.     Admitted that the Court issued a decision in *Playtex I* on February 6, 2008, which document speaks for itself.  Denied that the *Playtex I* Court was presented with evidence concerning the specific changes made to New Gentle Glide or comparisons of New Pearl to New Gentle Glide.  Further denied that the *Playtex I* Court made any findings of fact or conclusions of law concerning the falsity of any claims that New Pearl protects better than New Gentle Glide.  (Abreu Decl., Ex. B, at 1 & n. 1) (stating that the New Gentle Glide "product is not yet in the marketplace and P&G has not had any opportunity to analyze or test it.") (Finn Decl., ¶ 11) ("At the time of the hearing, Playtex had not yet conducted any *in vivo* testing comparing the leakage protection of New Gentle Glide to New Pearl.  Nor could it have done so.").

22.     Admitted that the Court issued a Decision in *Playtex I* on February 6, 2008 and that a true and accurate copy of the amended version of that decision was attached as Exhibit A to the Declaration of Harold P. Weinberger.  The Decision speaks for itself.

23.     Admitted that, on February 6, 2008, Energizer Holdings' Vice-President and General Counsel wrote to P&G and that a true and accurate copy of that letter was

attached as Exhibit H to the Declaration of Harold P. Weinberger. The letter speaks for itself. Otherwise denied.

24. Admitted that, prior to February 6, 2008, Playtex had results from an *in vitro* test showing that New Gentle Glide has important performance advantages over Old Gentle Glide. Denied that Playtex had completed *in vivo* testing and analysis comparing New Gentle Glide to New Pearl prior to February 18, 2008. (Finn Decl., ¶ 24).

25. Denied that Playtex had completed *in vivo* testing and analysis comparing New Gentle Glide to New Pearl prior to February 18, 2008. (Finn Decl., ¶ 24).

26. Admitted.

27. Denied.

28. Admitted that, on consent of both parties, the Court vacated the *Playtex I* injunction in its entirety.

**Additional Material Facts As To Which There Is No Genuine Issue To Be Tried**

29. New Gentle Glide had neither been developed nor sold when *Playtex I* was filed on October 9, 2002. (Edgett Decl., ¶ 3).

30. A true and correct copy of the Complaint in *Playtex I* is attached to the Declaration of Veronica C. Abreu as Exhibit D. (Abreu Decl., Ex. D).

31. In a letter dated May 3, 2007, P&G's counsel stated to the Court that P&G would seek permission to move to vacate the May 2003 Judgment and Injunction because "the Tampax Pearl product that is the subject of the Injunction has been materially changed," and therefore, "[t]he jury verdict that resulted in the Injunction was based on proof offered by Playtex in the form of testing of a product that is no longer the same as that product being marketed." (Abreu Decl., Ex. F, at 1-2).

32.     A true and correct copy of the May 3, 2007 letter referenced in paragraph 31 is attached as Exhibit F to the Declaration of Veronica C. Abreu.  (Abreu Decl., Ex. F).

33.     On June 1, 2007, Playtex offered to postpone the evidentiary hearing in *Playtex I* so that the parties could prepare *in vivo* tests and put New Gentle Glide at issue at the hearing on P&G's motion to vacate or modify.  The letter stated that:

> [a]s to the comparative testing between New Pearl and Gentle Glide, it is Playtex's position that a newly fielded test between New Pearl and New Gentle Glide may yield different results from the existing tests between New Pearl and Old Gentle Glide. We are simply not in a position to know *a priori*. Therefore, Playtex will not stipulate that the results will be the same.
>
> We will be sending you non-commercial samples of New Gentle Glide in the next few days, and commercial samples as soon as they become available.  We are prepared to postpone the hearing until such time as P&G has the ability to analyze the product and to conduct any testing it deems appropriate. (Weinberger Decl., Ex. E).

34.     A true and correct copy of the June 1, 2007 letter referenced in paragraph 33 is attached as Exhibit E to the Declaration of Harold P. Weinberger.

35.     By letter dated June 6, 2007, P&G responded to the letter referenced in paragraph 33.  P&G's response stated:

> I write in response to your June 1 letter.
>
> We plan to proceed with the hearing as scheduled. In addition, given that new Gentle Glide is not presently available and that, at the earliest, the product will become available in reasonable quantities in the marketplace sometime later this summer - at which point P&G would first have to analyze and test the product - we do not agree that P&G will be precluded from seeking additional relief from the injunction based on new Gentle Glide, if appropriate.  P&G otherwise reserves all its rights and remedies. (Weinberger Decl., Ex. F).

36. A true and correct copy of the June 6, 2007 letter referenced in paragraph 35 is attached as Exhibit F to the Declaration of Harold P. Weinberger.

37. P&G filed a Pre-Hearing Memorandum on or about June 8, 2008. In that memo, P&G stated, *inter alia*, that:

(a) New Pearl was "materially different from the old Pearl product that was the subject of the [May 2003] injunction." (Abreu Decl., Ex. B, at 1, 14).

(b) "[U]nder the terms of the May 2003 injunction the Court should permit P&G to make its substantiated claim of [New Pearl's] superior leakage protection" over Old Gentle Glide. (Abreu Decl., Ex. B, at 2).

(c) "The jury verdict that resulted in the injunction was based on proof offered by Playtex concerning a product that is not the same as the product now marketed by P&G." (Abreu Decl., Ex. B, at 14).

(d) "[S]ince P&G is marketing a materially changed tampon product, Playtex will suffer no prejudice if the Court grants the relief P&G seeks. *In the event Playtex believes future advertising claims made by P&G are false, Playtex is free to pursue its Lanham Act remedies, as it has done in the past*." (Abreu Decl., Ex. B, at 18) (emphasis added).

38. True and correct excerpts from the Pre-Hearing Memorandum referenced in paragraph 37 are attached to the Declaration of Veronica C. Abreu as Exhibit B.

39. In its Pre-Hearing Memorandum filed on or about June 8, 2008, Playtex stated, *inter alia*, that:

      (a)    "It is Playtex's position that New Gentle Glide is not a materially changed' product under the Injunction Order despite being ***an improved product***." (Weinberger Decl., Ex. G) (emphasis added).

      (b)    "Playtex invited P&G to postpone the June 19 hearing if it wished to test New Gentle Glide, but to date P&G has persisted in going forward. Playtex also informed P&G that, if it wished to go forward on New Pearl alone, it would be Playtex's position that P&G is barred from seeking additional relief from the Injunction Order on the grounds that New Gentle Glide is a 'materially changed' product. On June 6, 2007 ***P&G declined Playtex's invitation to postpone the hearing***." (Weinberger Decl., Ex. G) (emphasis added).

40.    The following issues were addressed by the parties at the June 2007 hearing in *Playtex I*:

      (a)    whether New Pearl was a "materially changed" product within the meaning of paragraph 8 of the *Playtex I* Judgment and Injunction. (Abreu Decl., Ex. B, at 1-2; Weinberger Decl., Ex. G).

      (b)    whether New Pearl in fact provides superior leakage protection over Old Gentle Glide. (Abreu Decl., Ex. B, at 1-2; Weinberger Decl., Ex. G).

      (c)    whether, in view of the evidence presented on the above two issues, the Court should either: (i) vacate the May 2003 Injunction Order; or (ii) "rule that under paragraph 8 of the [May 2003] Injunction P&G can make its truthful advertising claim" that New Pearl has "superior leakage protection" compared to Old Gentle Glide. (Abreu Decl., Ex. B, at 22).

41.     The only Playtex product at issue in the June 2007 hearing was Old Gentle Glide. (Abreu Decl., Ex. B, at 1 & n. 1) (stating that the New Gentle Glide "product is not yet in the marketplace and P&G has not had any opportunity to analyze or test it.") (Finn Decl., ¶ 11) ("At the time of the hearing, Playtex had not yet conducted any *in vivo* testing comparing the leakage protection of New Gentle Glide to New Pearl.  Nor could it have done so.").

42.     No evidence concerning New Gentle Glide's leakage protection as compared to New Pearl was presented to the Court at the June 2007 hearing. (Abreu Decl., Ex. B at 1 & n. 1) (stating that the New Gentle Glide "product is not yet in the marketplace and P&G has not had any opportunity to analyze or test it.") (Finn Decl., ¶ 11) ("At the time of the hearing, Playtex had not yet conducted any *in vivo* testing comparing the leakage protection of New Gentle Glide to New Pearl.  Nor could it have done so.").

43.     Playtex invested $3.99 million to design and launch New Gentle Glide. (Edgett Decl., ¶ 3).

44.     Playtex's New Gentle Glide has important performance advantages over Old Gentle Glide with respect to, *inter alia*, leakage protection. (Weinberger Decl., Ex. H); (Edgett Decl., ¶¶ 4, 8-11).

45.     In developing New Gentle Glide, Playtex made three changes to the construction of the Gentle Glide pledget. (Edgett Decl., ¶ 6).

46.     Playtex conducted *in vitro* testing comparing the Old Gentle Glide pledget to the New Gentle Glide pledget. (Edgett Decl., ¶ 8).

47.     The *in vitro* test referred to in paragraph 46 showed that the changes to New Gentle Glide's pledget resulted in, *inter alia*, improved fluid displacement, as measured using gravimetric techniques and a modified version of the standard Syngyna test. (Edgett Decl., ¶ 9).

48.     The changes referenced in paragraphs 45 and 47 contributed to New Gentle Glide's improved leakage protection compared to Old Gentle Glide. (Edgett Decl., ¶¶ 10-11).

49.     On March 15, 2007, Playtex submitted a 510(k) to the Food and Drug Administration ("FDA") for New Gentle Glide. The FDA cleared New Gentle Glide on April 13, 2007. (Edgett Decl., ¶ 12).

50.     New Gentle Glide did not penetrate the market in sufficient quantities to support a reliable *in vivo* test until August 27, 2008. (Finn Decl., ¶ 7).

51.     Playtex began preparing to conduct *in vivo* testing comparing the leakage protection of New Gentle Glide with that of New Pearl as soon as logistically feasible following the introduction of New Gentle Glide to the market. (Finn Decl., ¶ 3).

52.     From the summer of 2007 through February 18, 2008, several steps were undertaken to collect test samples for, field, and analyze the results of the *in vivo* test referenced in paragraph 51. (Finn Decl., ¶¶ 10-24).

53.     February 18, 2008 was the first date on which Playtex was in possession of statistically analyzed *in vivo* test results comparing the leakage protection of New Gentle Glide to that of New Pearl. (Finn Decl., ¶ 24).

54.     The *in vivo* test results referenced in paragraph 53 showed that New Pearl is not, in fact, superior to New Gentle Glide with respect to leakage protection.  (Finn Decl., ¶¶ 23-24).

55.     The total amount of time that elapsed between the introduction of New Gentle Glide onto the market (as referenced in paragraph 50) and Playtex's possession of the statistically analyzed results of the *in vivo* test (as referenced in paragraph 53) is consistent with the average time it takes to conduct similar *in vivo* tests.  (Finn Decl., ¶ 25).

56.     After New Gentle Glide was launched on May 25, 2007, no P&G advertisements or promotional materials compared the leakage protection of New Pearl to either "Playtex Gentle Glide" or "the next leading brand" until on or about March 2008.  (*See* Elkinton Decl., ¶ 3).

57.     On or about March 3, 2008, P&G began airing television ads claiming that its New Pearl plastic tampons "protect even better than the next leading brand."  (Elkinton Decl., ¶ 4).

58.     On or about March 2, 2008, P&G ran a print ad in the Washington Post stating that "Women choose Tampax 2 to 1 … The tampon with unique built-in backup protection." (Elkinton Decl., ¶ 4).

59.     Playtex's first knowledge of the ads referenced in paragraph 57 was on March 4, 2008.  (Elkinton Decl., ¶ 5).

60.     A true and correct copy of the print ad referenced in paragraph 58 is attached to the affidavit of Julie Elkinton as Exhibit A.

61. In March 2008, Playtex's New Gentle Glide was, and continues to be, the "next leading brand." (Elkinton Decl., ¶ 6).

62. The only Playtex Gentle Glide product on the market in the United States in March 2008 was, and continues to be, New Gentle Glide. (Weinberger Decl., Ex. H); (Edgett Decl., ¶ 13).

63. On or about May 1, 2008, P&G ran a print ad in Seventeen Magazine that stated, "a leak can ruin everything" and "don't be fooled by look-alikes. Look before you leak." (Elkinton Decl., ¶ 7).

64. A true and correct copy of the ad referenced in paragraph 63 is attached to the affidavit of Julie Elkinton as Exhibit B.

65. On or about May 4, 2008, P&G ran a print ad claiming that the New Pearl plastic tampons "give you more leak free periods than the next leading brand." The same ad is scheduled to run on or about June 1, 2008. (Elkinton Decl., ¶ 8).

66. A true and correct copy of the ad referenced in paragraph 65 is attached to the affidavit of Julie Elkinton as Exhibit C.

67. On or about May 4, 2008, P&G ran an ad in the Washington Post that stated "look before you leak" and "not all products are created equal." (Elkinton Decl., ¶ 9).

68. A true and correct copy of the ad referenced in paragraph 67 is attached to the affidavit of Julie Elkinton as Exhibit D.

Dated:   June 2, 2008

                    DAVIS POLK & WARDWELL

                    By:   s/ Veronica C. Abreu
                           Veronica C. Abreu (*pro hac vice*)

Matthew B. Lehr (ML-9982)
Sasha E. Polonsky (SP-0422)
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

Anthony Fenwick (*pro hac vice*)
David J. Lisson (*pro hac vice*)
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111

*Attorneys for Defendant Playtex Products, Inc*.