UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————— x
THE PROCTER & GAMBLE COMPANY,           :
                                        :  08 Civ. 01532 (WHP)
                Plaintiff,                  :
                                        :
        - against -                    :  Plaintiff The Procter & Gamble
                                        :  Company's Response to Defendant
PLAYTEX PRODUCTS, INC.,                 :  Playtex Products, Inc.'s Statement
                                        :  Pursuant to Local Rule 56.1
                Defendant.                  :
                                        :
———————————————————————— x

        Pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and in support of its motion for summary judgment and its opposition to defendant Playtex Product, Inc. ("Playtex")'s cross-motion for summary judgment, plaintiff The Procter & Gamble Company ("P&G"), by its undersigned counsel, Kramer Levin Naftalis & Frankel LLP, respectfully responds to the additional facts asserted in Playtex's Statement Pursuant to Local Rule 56.1 as follows:

        29.    Admitted.

        30.    Admitted.

        31.    Admitted that counsel for P&G sent a letter to the Court, dated May 3, 2007, seeking permission to move for relief from the May 29, 2003 Judgment and Order of Permanent Injunction, and that a true and accurate copy of that letter is attached as Exhibit F to the Declaration of Veronica C. Abreu, dated June 2, 2008 ("Abreu Declaration"). The document speaks for itself.

32. Admitted.

33. Admitted that, on June 1, 2007, counsel for Playtex sent a letter to counsel for P&G responding to an e-mail, dated May 18, 2007, and that true and accurate copies of the e-mail and letter are attached as Exhibits D and E, respectively, to the Declaration of Harold P. Weinberger, dated May 1, 2008 ("Weinberger Declaration" or "Weinberger Decl."). The documents speak for themselves.

34. Admitted.

35. Admitted that, on June 6, 2007, counsel for P&G sent a letter to counsel for Playtex responding to Playtex's June 1, 2007 letter, and that a true and accurate copy of the June 6, 2007 letter is attached as Exhibit F to the Weinberger Declaration. The document speaks for itself.

36. Admitted.

37. Admitted that P&G filed a Pre-Hearing Memorandum on or about June 8, 2008, and that a complete version of this memorandum was submitted to the Court at that time and is on file with the Clerk of the Court under seal. The document speaks for itself.

38. Admitted.

39. Admitted that Playtex filed a Pre-Hearing Memorandum on or about June 8, 2008, and that a complete version of this memorandum was submitted to the Court at that time and is on file with the Clerk of the Court under seal. The document speaks for itself.

KL3 2662125.2

40. Disputed to the extent paragraph 40 suggests that the prior action was limited to "Old" as opposed to "New" Gentle Glide. The claim litigated in the prior action and resolved by the Court's February 6, 2008 Memorandum and Order ("Decision") was whether an advertising claim by P&G that its Tampax Pearl tampons provide superior leakage protection relative Playtex's Gentle Glide tampons is false. *Playtex Prods., Inc. v. Procter & Gamble Co.*, No. 02 Civ. 8046, 2008 WL 399295 (S.D.N.Y. Feb. 11, 2008) (Weinberger Decl., Exh. A); (Weinberger Decl., Exh. B). The Court's Decision concerned whatever product Playtex was selling as Gentle Glide, which, at the time of the Decision, was the purportedly new version of Gentle Glide ("New Gentle Glide"). (Declaration of Keith Edgett, dated May 30, 2008 ("Edgett Decl."), ¶ 13).

41. Disputed for the reasons set forth in response to paragraph 40. The material cited by Playtex does not support the facts asserted in paragraph 41.

42. Admitted that, prior to the Court's Decision, neither party presented evidence concerning the leakage protection provided by New Gentle Glide relative to either its predecessor, "Old" Gentle Glide, or Tampax Pearl. Playtex did not do so, despite ample opportunity since, among other things, Playtex admits that the company launched New Gentle Glide prior to the time P&G filed its Rule 60(b)(5) motion. (Edgett Decl. ¶ 13).

43. Denies knowledge or information sufficient to form a belief as to the truth of the facts asserted in paragraph 43 as no discovery has been conducted.

44. Disputed. The material cited by Playtex does not support the facts asserted in paragraph 44. Playtex has submitted no evidence that New Gentle Glide provides improved leakage protection relative to its predecessor. The statements in Mr. Edgett's

declaration, upon which Playtex relies, are conclusory and do not comply with Fed. R. Civ. P. 56(e). Although Mr. Edgett references testing concerning the relative leakage protection of "New" and "Old" Gentle Glide, Playtex has not submitted documentary evidence of this testing. Nor has P&G had the opportunity to conduct discovery with respect to such testing.

45. Denies knowledge or information sufficient to form a belief as to the truth of the facts asserted in paragraph 45 as no discovery has been conducted.

46. Denies knowledge or information sufficient to form a belief as to the truth of the facts asserted in paragraph 46 as no discovery has been conducted.

47. Disputed for the reasons set forth in response to paragraph 44.

48. Disputed for the reasons set forth in response to paragraph 44.

49. Admitted.

50. Disputed. Playtex did not need to wait until New Gentle Glide "penetrated" the market to test it against Tampax Pearl. The P&G study, accepted by the Court in its Decision, tested the parties' products before New Pearl was widely available in the market. *See Playtex Prods.*, 2008 WL 399295, at *3-5 (Weinberger Decl., Exh. A). Playtex did not raise this as an issue in the prior action.

51. Admitted that Playtex had decided to conduct an *in vivo* study comparing the leakage protection provided by New Gentle Glide and New Pearl even before P&G submitted its Rule 60(b)(5) motion on June 8, 2007, but disputed that Playtex commenced that study "as

soon as logically feasible following the introduction of New Gentle Glide to the market" on May 25, 2007 for the reasons stated in response to paragraph 50.

52. Disputed. According to the Declaration of John Finn, dated May 23, 2008 ("Finn Decl."), Playtex had gathered and validated the data from its study by January 23, 2008, at which time Playtex received a preliminary analysis. (Finn Decl. ¶ 21). Mr. Finn claims that the study data was given to Playtex's statistician that same day, and that Playtex did not receive a final statistical analysis until almost one month later on February 18, 2008. (Finn Decl. ¶¶ 23-24).

53. Disputed. By letter dated February 6, 2008, Playtex told P&G that: "We in fact have data that shows no protection difference between New Pearl and New Gentle Glide." (Weinberger Decl., Exh. H).

54. Disputed. The material cited by Playtex does not support the facts asserted in paragraph 54. Playtex has submitted no evidence concerning its *in vivo* study. The statements in Mr. Finn's declaration, upon which Playtex relies, are conclusory and do not comply with Fed. R. Civ. P. 56(e). Playtex provides no documentation to support the claim that its study shows New Pearl is not superior to New Gentle Glide with respect to leakage protection. Playtex attaches no study protocol, no results, no reports, and no statistical analysis. Mr. Finn does not even purport to describe in his declaration the methodology used, the scope of the study, the results and/or the statistical analysis; rather, he merely states when Playtex conducted the study and when it received certain, unattached documents containing test data and analyses. Further, P&G has not had the opportunity to conduct discovery with respect to Playtex's *in vivo* study.

55.     Disputed. Playtex did not need to wait until New Gentle Glide "penetrated" the market to test it against Tampax Pearl. The P&G study, accepted by the Court in its Decision, tested the parties' products before New Pearl was widely available in the market. *See Playtex Prods.*, 2008 WL 399295, at *3-5 (Weinberger Decl., Exh. A). Playtex did not raise this as an issue in the prior action. Further, the leakage protection studies advanced by the parties at the June 2007 hearing did not take nearly as long as Playtex's current study, which Playtex claims took almost nine months. Playtex has presented no evidence to explain why its statistician took almost one month to perform a final statistical analysis of already gathered and validated data. Playtex has presented no evidence that its study could not have been conducted more quickly with due diligence or that it could not have performed a final statistical analysis before the Court's February 6, 2008 Decision.

56.     Admitted that P&G did not disseminate advertising containing the claim that Tampax Pearl tampons provide superior leakage protection relative to Gentle Glide tampons until after the Court gave it permission to do so on February 6, 2008. *Playtex Prods., Inc.*, 2008 WL 399295 (Weinberger Decl., Exh. A).

57.     Admitted that, on or about March 3, 2008, P&G began airing television ads concerning its Tampax Pearl tampons. P&G respectfully refers the Court to those ads for their full and complete contents.

58.     Admitted that, on or about March 2, 2008, P&G ran a print ad in the Washington Post, and that a true and accurate copy of that ad is attached as Exhibit A to the Declaration of Julie Elkinton, dated May 28, 2008 ("Elkinton Declaration"). The document speaks for itself.

KL3 2662125.2

59. Admitted.

60. Admitted.

61. Admitted that, in March 2008, Playtex's Gentle Glide tampons were and continue to be the "next leading brand."

62. Admitted.

63. Admitted that on or about May 4, 2008, P&G ran a print ad in Seventeen Magazine, and that a true and accurate copy of that ad is attached as Exhibit B to the Elkinton Declaration. The document speaks for itself.

64. Admitted.

65. Admitted that, on or about May 4, 2008, P&G ran a print ad in the Washington Post, and that a true and accurate copy of that ad is attached as Exhibit C to the Elkinton Declaration. The document speaks for itself.

66. Admitted.

67. Admitted that, on or about May 4, 2008, P&G ran a print ad in the Washington Post, and that a true and accurate copy of that ad is attached as Exhibit D to the Elkinton Declaration. The document speaks for itself.

KL3 2662125.2

68. Admitted.

Dated: New York, New York
June 17, 2008

Kramer Levin Naftalis & Frankel LLP

By: _____
Harold P. Weinberger
Jonathan M. Wagner
Tobias B. Jacoby

1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
hweinberger@kramerlevin.com
jwagner@kramerlevin.com
tjacoby@kramerlevin.com

Of Counsel:

Karl S. Steinmanis, Esq.
Travis C. Cresswell, Esq.
The Procter & Gamble Company
One Procter & Gamble Plaza
Cincinnati, Ohio 45202

Attorneys for Plaintiff
The Procter & Gamble Company

Index No. 08 Civ. 01532 (WHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE PROCTER & GAMBLE COMPANY,

                              Plaintiff,

- against -

PLAYTEX PRODUCTS, INC.,

                              Defendant.

---

**Plaintiff The Procter & Gamble Company's
Response to Defendant Playtex Products,
Inc.'s Statement Pursuant to Local Rule 56.1**

---

**Kramer Levin Naftalis & Frankel LLP**
*Attorneys for* Plaintiff
The Procter & Gamble Company

1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

*All communications should be referred to*
Harold P. Weinberger