UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

THE PROCTER & GAMBLE COMPANY,                  :

                           Plaintiff,     :

             - against -                    :

PLAYTEX PRODUCTS, INC.,                         :

                    Defendant.     :

                                :

---------------------------------------------------------- x

08 Civ. 01532 (WHP)


## MEMORANDUM OF PLAINTIFF THE PROCTER & GAMBLE COMPANY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT PLAYTEX PRODUCTS, INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT


KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 AVENUE OF THE AMERICAS    NEW YORK NY 10036

## Table of Contents

Page

Table of Authorities...................................................................................................ii

Preliminary Statement ............................................................................................... 1

Argument .................................................................................................................... 2

Point 1

PLAYTEX HAS FAILED TO RAISE GENUINE ISSUES OF
MATERIAL FACT TO DEFEAT P&G'S MOTION FOR
SUMMARY JUDGMENT ON *RES JUDICATA* GROUNDS OR
PROVIDE ANY BASIS ON WHICH ITS OWN MOTION SHOULD
BE GRANTED ........................................................................................ 2

A.    Playtex neither disputes the material facts nor rejects the
controlling law on which P&G's motion is based ........................... 3

B.    Playtex's attempt to recast its challenge as a new claim raises
irrelevant matters and ignores the crucial facts and law................... 6

1.    The date of P&G's advertising is irrelevant ......................... 7

2.    Playtex's *in vivo* study is irrelevant....................... 8

3.    The purported change to Gentle Glide,
occurring prior to the Decision, does not create
a new claim ................................................................... 12

4.    The parties' correspondence is irrelevant........................... 13

Point 2

EVEN IF ITS ARGUMENTS ARE ACCEPTED, PLAYTEX HAS
SUBMITTED NO PROPER, ADMISSIBLE EVIDENCE OF ITS *IN
VIVO* STUDY OR NEW GENTLE GLIDE'S ALLEGEDLY
IMPROVED LEAKAGE PROTECTION IN OPPOSITION TO
P&G'S MOTION OR IN SUPPORT OF ITS OWN MOTION ............... 14

Conclusion............................................................................................................... 17

<u>Table of Authorities</u>

<u>Page</u>

<u>Cases</u>:

*Ahmed v. INS,*
   No. 95 Civ. 762, 1995 WL 489710 (S.D.N.Y. Aug. 15, 1995)................................5

*Allen v. McCurry,*
   449 U.S. 90 (1980) ........................................................................7

*Bailey-Lynch v. Protection One Alarm Monitoring, Inc.,*
   No. 02-CV-0615E, 2005 WL 1334870 (W.D.N.Y. June 6, 2005)........................15

*Brody v. Enhance Reinsurance Co. Pension Plan,*
   No. 00 Civ. 9660, 2003 WL 1213084 (S.D.N.Y. Mar. 17, 2003)........................15

*Bryant v. Maffucci,*
   923 F.2d 979 (2d Cir. 1991)................................................................15

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ........................................................................15

*Cromwell v. County of Sac,*
   94 U.S. 351 (1876) ..........................................................................6

*Federated Dep't Stores, Inc. v. Moitie,*
   452 U.S. 394 (1981) ..........................................................................7

*Guerrero v. Katzen,*
   774 F.2d 506 (D.C. Cir. 1985) ....................................................5, 5 n.2, 11

*HCC, Inc. v. R H & M Machine Co.,*
   39 F. Supp. 2d 317 (S.D.N.Y. 1999)....................................................12 n.4

*Hellstrom v. U.S. Dep't of Veterans Affairs,*
   201 F.3d 94 (2d Cir. 2000)...............................................................17 n.7

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,*
   400 F.3d 139 (2d Cir. 2005)..............................................................5 n.1

*Mademoiselle Knitwear, Inc. v. Liz Claiborne, Inc.,*
   No. 98 Civ. 3252, 1999 WL 377853 (S.D.N.Y. June 9, 1999) .............................6

*Maharaj v. BankAmerica Corp.,*
   128 F.3d 94 (2d Cir. 1997)................................................................5 n.1

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ........................................................................15

KL3 2662392.1

Table of Authorities
(continued)

Page

*Niagara Mohawk Power Corp. v. Jones Chem., Inc.,*
   315 F.3d 171 (2d Cir. 2003) ............................................................................15-16

*Playtex Prods., Inc. v. Procter & Gamble Co.,*
   No. 02 Civ. 8046, 2008 WL 399295 (S.D.N.Y. Feb. 11, 2008) ..........................1, 3

*Raskin v. Wyatt Co.,*
   125 F.3d 55 (2d Cir. 1997) ......................................................................................15

*SEC v. First Jersey Securities, Inc.,*
   101 F.3d 1450 (2d Cir. 1996) ........................................................... 4-5, 5 n.1 & n.2

*Saud v. Bank of New York,*
   929 F.2d 916 (2d Cir. 1991) ..........................................................5 n.2, 6, 10, 11

*Woods v. Dunlop Tire Corp.,*
   972 F.2d 36 (2d Cir. 1992) ........................................................................................6

Statutes:

Fed. R. Civ. P. 56 ..............................................................................................15, 16

Fed. R. Evid. arts. VIII & X ..................................................................................16 n.6

Restatement (Second) of Judgments (1982) ..................................................................5

KL3 2662392.1

<u>Preliminary Statement</u>

Plaintiff The Procter & Gamble Company ("P&G") respectfully submits this memorandum in further support of its motion for summary judgment and in opposition to the cross-motion of defendant Playtex Products, Inc. ("Playtex"). This Court should grant P&G's motion and deny Playtex's — and thereby effectively dispose of this action in its entirety — because Playtex does not dispute the critical facts that, as a matter of law, preclude it on *res judicata* grounds from challenging any advertising claim by P&G that its Tampax Pearl tampons provide superior leakage protection compared to Playtex's Gentle Glide tampons.

In its February 6, 2008 Memorandum and Order ("Decision"), this Court held that a claim that Tampax Pearl provides superior protection to Gentle Glide is not false and that P&G is entitled to disseminate it in future advertising. *See Playtex Prods., Inc. v. Procter & Gamble Co.*, No. 02 Civ. 8046, 2008 WL 399295 (S.D.N.Y. Feb. 11, 2008) (Declaration of Harold P. Weinberger dated May 1, 2008 ("Weinberger Decl."), Exh. A). Now, after receiving this unfavorable ruling, Playtex seeks to re-litigate the very same claim based upon purported changes it made to Gentle Glide that allegedly affect the leakage protection provided by that product. Yet Playtex admits that it developed and started selling the purportedly new version of Gentle Glide ("New Gentle Glide") prior to P&G's Rule 60(b)(5) motion and that New Gentle Glide had been the *only* Gentle Glide product in the market for many months by the time the Court rendered its Decision.

It is beyond dispute that Playtex could have asserted the changes to Gentle Glide as a defense to the superiority claim litigated in the prior action before the Decision was rendered by showing that P&G's testing substantiating the claim did not use the current version of Gentle Glide. Under established case law, with which Playtex does not quarrel, this precludes Playtex

from relying on these alleged new facts as a basis for relitigating Playtex's false advertising claim.

Playtex's principal response is to attempt to repackage the claim previously adjudicated by the Court as an entirely new and separate claim arising after the Decision, principally on the grounds that (i) P&G's advertising did not air until after the Court's February 6 Decision, and (ii) Playtex asserts it did not have final *in vivo* test results comparing the products until February 18. As shown in Point 1 below, these arguments simply beg the question and avoid the facts and law central to claim preclusion in this case: Playtex changed its Gentle Glide product before the final Decision in the prior action, and thus could have raised that fact as a defense to the claim then being litigated. Moreover, as shown in Point 2, even if Playtex were correct that an improvement in Gentle Glide's leakage protection prior to the Decision provides a basis for relitigation of the claim, Playtex has offered nothing but conclusory assertions with respect to that issue, which would be insufficient to carry its burden either in opposing P&G's motion or supporting Playtex's cross-motion.

<u>Argument</u>

Point 1

PLAYTEX HAS FAILED TO RAISE GENUINE ISSUES OF
MATERIAL FACT TO DEFEAT P&G'S MOTION FOR SUMMARY
JUDGMENT ON *RES JUDICATA* GROUNDS OR PROVIDE ANY
<u>BASIS ON WHICH ITS OWN MOTION SHOULD BE GRANTED</u>

Playtex does not dispute the material facts on which P&G's motion is based. Nor does Playtex contest the controlling legal point that it is the time of the final judgment that is relevant in determining whether discovery of alleged new facts prevents application of *res*

- 2 -

*judicata*. Instead, Playtex bases its opposition and its own cross-motion on a series of arguments that are irrelevant to the issue.

A.    Playtex neither disputes the material facts nor rejects
      the controlling law on which P&G's motion is based

The material facts on which P&G's motion is based are straightforward and not disputed. First, the claim litigated and resolved in the prior action was whether an advertising claim by P&G that Tampax Pearl provides superior leakage protection relative to Gentle Glide is false. That is the claim originally brought by Playtex in 2002. (Declaration of Veronica C. Abreu dated June 2, 2008 ("Abreu Decl."), Exh. D). After a jury found that Playtex had proved this superiority claim false, the Court entered an injunction in May 2003 (the "Injunction"), which barred P&G from disseminating advertising containing the superiority claim. (Weinberger Decl., Exh. B). The same superiority claim was the subject of P&G's Rule 60(b)(5) motion, which sought relief from the Injunction based upon subsequent improvements P&G made to the leakage protection performance of Tampax Pearl tampons. After an evidentiary hearing in June 2007, the Court held on February 6, 2008 that P&G had proved that the superiority claim was no longer false and that P&G therefore could disseminate that claim. *Playtex Prods.*, 2008 WL 399295, at 5 (Weinberger Decl., Exh. A).

Nor does Playtex dispute the facts concerning its claimed improved version of Gentle Glide. Playtex acknowledges that it developed the changes made to Gentle Glide and started selling the purportedly new version of that product even before P&G filed its Rule 60(b)(5) motion on June 8, 2007, that New Gentle Glide "penetrated" the market in August 2007, and that no "Old" Gentle Glide was being sold by the end of 2007 — all well prior to entry of

- 3 -

final judgment on February 6, 2008. (Declaration of John Finn dated May 23, 2008 ("Finn Decl.") ¶¶ 3, 7; Declaration of Keith Edgett dated May 30, 2008 ("Edgett Decl.") ¶ 13).

As to the legal basis for the motion, Playtex does not appear to quarrel with the principle that *res judicata* bars re-litigation of the same claim based on facts in existence prior to or at the time of the final judgment. (*See* Playtex Memorandum in Opposition to P&G's Motion ("Playtex Br.") at 14-18). Although Playtex cites *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2d Cir. 1996) to suggest that claim preclusion should not apply because the "facts" upon which Playtex now relies arose after the complaint in the prior action was filed in 2002 (Playtex Br. at 1, 18-19), that case deals with an issue different from the one presented here.

*First Jersey* holds that *res judicata* does not bar the assertion of a claim in a subsequent action when that claim arises from a separate "transaction" occurring after the complaint in the prior action was filed. 101 F.3d at 1462-65. In that case, defendants argued that the SEC's claims were barred by *res judicata* in light of a previous administrative proceeding and settlement between the parties. The Court of Appeals, however, found that the two actions were based on distinct claims for purposes of *res judicata* because they involved entirely separate fraudulent trades occurring in different years and involving different securities. *Id.* at 1464 ("The claim that First Jersey defrauded customers in the sale, purchase, and repurchase of certain securities in 1975-1979 is not the same as the claim that First Jersey defrauded customers in the sale, purchase, and repurchase of other securities in 1982-1985."). Because the new claims arose after the filing of the first action, the Court held that the SEC was not precluded from raising those new claims in the second lawsuit. *Id.* at 1464-65 (holding that a plaintiff is not required to amend his complaint to assert a new, separate claim based on facts arising after

- 4 -

the filing of the complaint, "and his election not to do so is not penalized by application of *res judicata* to bar a later suit on that subsequent conduct.").[1]

First Jersey is not relevant here because Playtex is not asserting a new claim that is distinct from the one litigated in the prior action. Rather, Playtex is attempting to re-litigate the same claim based upon changed facts that were available to it prior to final judgment. The authority cited by P&G in its opening brief — authority that Playtex has failed to rebut — holds that *res judicata* precludes a party from doing just that. (P&G's Memorandum in Support of Motion ("P&G Br.") at 14-15, 18 (citing, *inter alia Guerrero v. Katzen*, 774 F.2d 506, 508 (D.C. Cir. 1985); *Ahmed v. INS*, No. 95 Civ. 762, 1995 WL 489710, at *4-5 (S.D.N.Y. Aug. 15, 1995); Restatement (Second) of Judgments § 24, cmt. f (1982)).[2]

Finally, it is beyond dispute that Playtex could have raised the changes to Gentle Glide as a defense to the claim litigated in the prior action before judgment was entered. Indeed, changes to the leakage protection provided by Gentle Glide would have been directly relevant to

---

[1]  *First Jersey*'s progeny, cited by Playtex, similarly hold that a new and distinct claim arising after the filing of a complaint is not barred by *res judicata*. *See, e.g., Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 400 F.3d 139 (2d Cir. 2005) (holding that retaliatory discharge claim was not barred by *res judicata* because employee's discharge occurring after filing of complaint was separate "transaction" giving rise to new claim distinct from discrimination claims litigated in prior action); *Maharaj v. BankAmerica Corp.*, 128 F.3d 94 (2d Cir. 1997) (holding that claims arising out of dissolution of company occurring after filing of complaint were not barred by *res judicata* because dissolution was separate "transaction" giving rise to new claims distinct from those litigated in prior action).

[2]  Playtex is wrong to state that *First Jersey* "rejected" *Guerrero v. Katzen*, 774 F.2d 506 (D.C. Cir. 1985), a case cited with approval by the Court of Appeals in *Saud v. Bank of New York*, 929 F.2d 916 (2d Cir. 1991). *First Jersey* and *Guerrero* concern entirely different situations and are wholly compatible. *First Jersey* holds that the time of the complaint determines whether a party can litigate a claim that is separate and distinct from a previously litigated claim; if the new claim arose after the complaint, it is not precluded. *Guerrero*, on the other hand, holds that *res judicata* precludes a party from re-litigating the same claim based on facts and evidence available prior to entry of final judgment.

KL3 2662392.1

the superiority claim, especially since P&G supported that claim with an *in vivo* study that tested what Playtex now says was an obsolete version of Gentle Glide. The doctrine of *res judicata* precludes Playtex from once again contesting the superiority claim because Playtex cannot assert as a new claim that which it could have raised as a defense to the claim litigated and resolved in the prior action. (P&G Br. at 13). *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876) (*res judicata* bars "not only . . . every matter which was offered and received to sustain or defeat the claim or demand, but . . . any other admissible matter which might have been offered for that purpose"); *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) (a judgment provides finality "not only as respects matter actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end."); *see also Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991) (precluding party from bringing claim based on facts of which party was on notice but failed to raise as defense during prior litigation); *Mademoiselle Knitwear, Inc. v. Liz Claiborne, Inc.*, No. 98 Civ. 3252, 1999 WL 377853, at *5-8 (S.D.N.Y. June 9, 1999) (holding that judgment precluded party from raising claim that could have been raised as defense in prior action).

B.    Playtex's attempt to recast its challenge as a new claim
      raises irrelevant matters and ignores the crucial facts and law

Despite these undisputed facts and the controlling legal principles, Playtex seeks to avoid application of *res judicata* with several arguments designed to characterize its claim as new and to blame P&G for Playtex's failure to raise the issue relating to New Gentle Glide in the prior action. None of these arguments have merit.

1.    <u>The date of P&G's advertising is irrelevant</u>

Playtex first contends that its current challenge to the superiority claim is actually a new and distinct claim because it arises out of P&G advertising that was disseminated after the Court's February 6, 2008 Decision. (Playtex Br. at 1, 3, 7-8, 14-15). But the date of P&G's advertising is irrelevant if the advertising *claim* contained in those advertisements is the same as the one litigated and resolved in the prior action. Playtex's contention, therefore, simply begs the question of whether Playtex's current challenge concerns the same claim decided by the Court in its February 6, 2008 Decision.

A new claim is not created simply because there is a new advertisement that a party would not have had "standing" to challenge before it was aired. (Playtex Br. at 19). A judgment as to the truth or falsity of an advertising claim has preclusive effect upon all challenges to future advertisements containing the same claim. If the law were otherwise, *res judicata* would be meaningless in the false advertising context because with every new advertisement a plaintiff could bring a new lawsuit and a defendant could raise the same defenses, regardless of any prior judgment concerning the falsity of the claim. This is precisely what *res judicata* is intended to avoid. *See, e.g., Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981) (*res judicata* serves "vital public interests" by dictating "that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties.") (quotations and citation omitted); *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (*res judicata* "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.").

KL3 2662392.1

P&G's post-Decision advertising is simply new advertising containing the very same superiority claim that the Court ruled was not false. Indeed, the purpose of P&G's motion was to gain the Court's approval to make that claim. The Court's Decision holding that P&G has the right to make this advertising claim is *res judicata* as to any challenge to that claim in future advertising.

   2.    Playtex's *in vivo* study is irrelevant

Playtex also contends that it is asserting a new claim because its challenge is based in part upon an *in vivo* study comparing New Pearl and New Gentle Glide and that it did not receive the final statistical analysis for that study until February 18, 2008, after the Decision was rendered on February 6.    (Playtex Br. at 16-18).    This argument is wrong for two independent reasons. First, Playtex did not need *any* testing to raise the purported changes to Gentle Glide as a defense to the claim litigated in the prior action.  Second, even if it did, Playtex was clearly in a position to develop that testing prior to the Decision, and in fact did so.

On P&G's Rule 60(b)(5) motion, the burden was on P&G to substantiate the superiority claim it sought to make.  P&G did so by submitting evidence of an *in vivo* study comparing Tampax Pearl and Gentle Glide.  Before entry of final judgment, Playtex could have raised the contention that P&G's study tested a version of Gentle Glide that Playtex no longer sells and that therefore P&G's study was not valid; all Playtex had to do was present evidence of changes to its product that would be expected to affect leakage protection performance.  Indeed, Playtex's own submission makes clear that it could have done so not only before entry of final judgment but before the hearing.  Playtex (i) claims that it began development of a new version of Gentle Glide precisely to improve that product's leakage protection performance, (ii) asserts that it expected these changes to have that effect, and (iii) admits that it began selling the

- 8 -

purportedly new version of that product even before P&G made its motion. (Edgett Decl. ¶¶ 3-7, 10, 14; Playtex Br. at 8, 15; Def. 56.1 Stmt. ¶ 15).

Further, although such testing was not necessary for Playtex to raise the changes to Gentle Glide as a defense in the prior action, Playtex admits that, even before P&G made its Rule 60(b)(5) motion, Playtex had results from *in vitro* testing comparing "Old" and "New" Gentle Glide — results which it claims show that New Gentle Glide has "important performance advantages" over "Old" Gentle Glide. (Edgett Decl. ¶¶ 8-9; Def. 56.1 Stmt. ¶ 24; Weinberger Decl., Exh. H). If true, such evidence could have undermined P&G's position at the June 2007 hearing and the P&G study upon which the Court ultimately relied to find P&G's superiority claim truthful.

Although Playtex is correct that it cannot now establish false advertising without a study showing that Tampax Pearl does not provide superior leakage protection relative to Gentle Glide (Playtex Br. at 16), that is beside the point. Playtex could have raised the changes to Gentle Glide as a defense when the burden of substantiating the superiority claim was on P&G, and thus Playtex did not even need to submit its own *in vivo* study. Moreover, even after the hearing and before the Decision, Playtex could have but chose not to submit the Gentle Glide changes to the Court. Instead, Playtex waited until after it lost P&G's motion to raise the changes to Gentle Glide, at which time Playtex re-acquired the burden of proof that it had before the Injunction was entered. But a claim that could have been raised in a prior action is not transformed into a new and distinct claim merely because the burden of proof has shifted to the other party. Moreover, it would turn the doctrine of *res judicata* on its head if a party could avoid preclusion on the basis of that party's decision not to raise a matter until after judgment. The law is clear: *res judicata* precludes litigation of any matter that *could have* been raised in

- 9 -

support of or in opposition to a claim litigated and resolved in a prior action. (*See* cases cited at p. 6, above).

Even if Playtex were somehow excused from raising the issue of the change in its product until it had test results — that is, even incorrectly assuming that the new "facts" on which it seeks to rely are not the changes to the product but rather the evidence as to their impact — Playtex's own submission again shows that it already had such evidence at the time of the Decision or, at the very least, was clearly in a position to develop it by then.

Playtex's contention that it did not ascertain the alleged falsity of the superiority claim until February 18, 2008 clearly is not accurate. On February 6, 2008 — the very day the Court rendered its Decision — Playtex wrote to P&G that "We in fact have data that shows no protection difference between New Pearl and New Gentle Glide." (Weinberger Decl., Exh. H).

Moreover, although Playtex asserts that it did not have the final statistical analysis before February 6, 2008, Playtex acknowledges that it had all the raw data by January 3, 2008, that this data was fully validated by January 12, 2008, and that the company validating the data provided Playtex with a preliminary analysis on January 23, 2008. (Finn Decl. ¶¶ 18-19, 21). Assuming Playtex was incapable of performing its own statistical analysis of the data, this evidence, in addition to the evidence Playtex claims it has showing the differences between New and Old Gentle Glide, clearly put Playtex on notice of the alleged fact that New Pearl does not provide superior leakage protection relative to New Gentle Glide. *See Saud*, 929 F.2d at 920 (precluding party from bringing claim based on facts of which party had "sufficient notice" but failed to raise as defense during prior litigation).

In addition, Playtex has presented no evidence to suggest that this final statistical analysis could not have been completed with the exercise of due diligence by February 6, 2008.

- 10 -

According to Playtex, the study data had been gathered and validated by January 23, 2008. (Finn Decl. ¶ 21). Playtex then allegedly immediately gave the data to its statistician, who took almost one month to provide Playtex with a report. (Finn Decl. ¶¶ 23-24). Playtex provides no excuse for this delay, but claims only that the total time that passed between the introduction of New Gentle Glide into the market on May 25, 2007 and Playtex's receipt of the final statistical analysis on February 18, 2008 — almost nine months — is "average," and that Playtex was not in "possession" of the final statistical analysis at the time of the Decision. (Finn Decl. ¶¶ 24-25). The standard, however, is not whether Playtex was actually in possession of facts or evidence, but rather whether those facts and evidence were discoverable. *See Saud*, 929 F.2d at 920 (new or additional evidence offered in a subsequent action "does not preclude the application of *res judicata*" except "when the evidence was either fraudulently concealed or when it could not have been discovered with due diligence."); *Guerrero*, 774 F.2d at 508 (same). Whether or not *res judicata* applies here cannot and does not turn on whether Playtex received a final statistical analysis before February 6 or twelve days after.[3]

---

[3]    While not relevant to P&G's motion, it is simply not believable that the almost nine months it took for Playtex to conduct and analyze the study was "average," let alone the quickest it could be done with appropriate diligence. Indeed, the leakage protection studies advanced by the parties at the hearing did not take nearly as long as Playtex's new *in vivo* study. Part of Playtex's explanation for the delay stems from its assertion that its tampons, like fine wine, needed to be aged before they could be tested. (Finn Decl. ¶ 8). Yet the P&G study accepted by the Court in its Decision tested the parties' products even before New Pearl was widely available in the market. Playtex did not raise this as an issue in the prior action. Further, *res judicata* cannot turn on how long it takes for a party to conduct its own test. That would allow a party to drag its feet in order to preserve the ability to re-litigate the matter if it receives an unfavorable ruling.

KL3 2662392.1

3.    The purported change to Gentle Glide, occurring
      prior to the Decision, does not create a new claim

Still another argument advanced by Playtex is that its current challenge is separate and distinct from the claim litigated in the prior action because it involves a product that "differs from the product at issue in *Playtex I*." (Playtex Br. at 1, 7-8, 15-16). The present case, however, does not concern separate claims arising from different products. Rather, Playtex's challenge is an attempt to re-litigate the same superiority claim based upon the fact that Playtex is now selling a purportedly new *version* of the same Gentle Glide product. Because that change occurred prior to judgment, it does not provide Playtex with the right to re-litigate the superiority claim upon which the Court ruled in its Decision.[4]

The advertising claim adjudicated by the Court, which is the one P&G is now making, compares Tampax Pearl to whatever product Playtex is selling as Gentle Glide. Thus, the Court's Decision applied to the Gentle Glide product in the market at the time the Decision was rendered, which was the purportedly new version of Gentle Glide. If Playtex wanted to argue that the Court's determination of P&G's Rule 60(b)(5) motion should be limited to the version of Gentle Glide that was no longer on the shelves by the end of 2007, it was incumbent upon Playtex to raise that matter prior to entry of final judgment in February 2008. Playtex

---

[4]    *HCC, Inc. v. R H & M Machine Co.*, 39 F. Supp. 2d 317 (S.D.N.Y. 1999), cited by Playtex (Playtex Br. at 16), is wholly inapposite. In a prior action, the predecessor of HCC had successfully sued R H & M for patent infringement. HCC then brought a second suit against R H & M alleging that two other, separate products infringed upon the same patent at issue in the prior action. The court held that *res judicata* did not bar R H & M from asserting a defense and counterclaim concerning the enforceability of the patent because the second action involved different products and therefore constituted a separate and distinct claim for patent infringement from the prior action. *Id.* at 320, 323-24. Thus, *HCC* did not involve a party's attempt to litigate a previously adjudicated claim based on changes made to the same product prior to the final judgment but rather concerned entirely different products giving rise to entirely separate claims.

- 12 -

could not wait until after it received an unfavorable ruling to argue that, based upon changes in fact that it created but did not raise, the Court's decision was moot before it was even issued.

Further, Playtex's assertion that P&G somehow prevented Playtex from putting New Gentle Glide at issue in the prior action "because P&G refused to postpone the hearing on its Rule 60 motion" is without merit. (Playtex Br. at 3, 13). Nothing P&G did or said prevented Playtex from introducing the changes it made to Gentle Glide — changes about which Playtex was in a unique position to know. Nor did P&G prevent Playtex from seeking a postponement of the hearing if Playtex felt it needed to conduct a study comparing New Pearl and New Gentle Glide for whatever reason. To the extent Playtex argues that "it was not Playtex's burden to put New Gentle Glide at issue in the June 2007 hearing" and that it therefore could wait until after judgment to raise this alleged change in fact (Playtex Br. at 12), Playtex is mistaken. While it was P&G's burden to substantiate the superiority claim, once it did so by submitting P&G's *in vivo* study, it was Playtex's obligation to raise the changes it made to Gentle Glide as a defense if it wanted to preserve the issue. (*See* cases cited at p. 6).

4.    The parties' correspondence is irrelevant

Yet another red herring offered up by Playtex is its argument that the parties' correspondence somehow permits it to re-litigate the superiority claim. (Playtex Br. at 1-3, 12-14). Although it is somewhat ironic for Playtex to rely on correspondence in which it represented that its new version of Gentle Glide was "substantially equivalent" to the old version and was not "materially changed" and asserted that P&G would be barred from raising the issue in the future if it proceeded with the hearing (Weinberger Decl., Exh. E), the question of "who said what to whom" is irrelevant to the legal issue of claim preclusion. As Playtex itself acknowledges, the parties' subjective intent is not relevant to the *res judicata* inquiry. (Playtex

- 13 -

Br. at 13). As noted in its opening brief, P&G referenced the parties' correspondence only to provide the Court with background to help explain why the parties acted the way they did.[5]

Point 2

EVEN IF ITS ARGUMENTS ARE ACCEPTED, PLAYTEX HAS SUBMITTED<br>
NO PROPER, ADMISSIBLE EVIDENCE OF ITS <em>IN VIVO</em> STUDY OR<br>
NEW GENTLE GLIDE'S ALLEGEDLY IMPROVED LEAKAGE PROTECTION IN<br>
<u>OPPOSITION TO P&G'S MOTION OR IN SUPPORT OF ITS OWN MOTION</u>

As set forth in Point 1 above, New Gentle Glide's allegedly improved leakage protection over Old Gentle Glide and the results of Playtex's *in vivo* study comparing New Pearl and New Gentle Glide are not material facts. Even if New Gentle Glide is significantly changed from its predecessor, and even if Playtex's study shows New Pearl is not superior to New Gentle Glide with respect to leakage protection, *res judicata* still applies because Playtex made the alleged improvements to Gentle Glide well prior to the Decision and could have raised those changes as a defense without submitting its current *in vivo* study. Under Playtex's theory, however, New Gentle Glide's allegedly improved performance and the results of Playtex's *in vivo* study are material. Assuming, *arguendo*, that Playtex is correct, Playtex is required to raise a genuine issue about these facts to defeat P&G's motion for summary judgment, and must make out a prima facie case to succeed on its own cross-motion. Playtex has done neither because it has submitted no proper evidence that its New Gentle Glide product offers improved leakage

---

[5]    Playtex also completely misreads P&G's statement in its June 8, 2007 Pre-Hearing Brief that "Playtex will suffer no prejudice if the Court grants the relief P&G seeks. In the event Playtex believes future advertising claims made by P&G are false, Playtex is free to pursue its Lanham Act remedies, as it has done in the past." (Abreu Decl., Exh. B at 18). P&G stated only that Playtex would be free to bring other claims — *i.e.*, claims not being litigated on P&G's motion — if the Court granted the relief P&G sought. P&G was not granting Playtex license to re-litigate the very claim adjudicated on its Rule 60(b) motion. In any event, nothing P&G or Playtex stated can change the law of *res judicata*.

- 14 -

protection over the prior version and that New Gentle Glide is at least equal in that respect to Tampax Pearl.

A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact and that it has a right to relief as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the party opposing summary judgment must set out specific facts showing a genuine issue for trial and come forward with enough evidence to support a jury verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). Evidence submitted either by a moving or opposing party to meet its summary judgment burden must be admissible at trial. Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must . . . set out facts that would be admissible in evidence"); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").

Further, affidavits offered by either party cannot be considered on summary judgment if the documents referenced in them are not also submitted. Fed. R. Civ. P. 56(e) ("If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit."); *Bailey-Lynch v. Protection One Alarm Monitoring, Inc.*, No. 02-CV-0615E, 2005 WL 1334870, at *3 (W.D.N.Y. June 6, 2005) (denying motion for summary in part because movant did not attach documents in support of her affirmation). A moving party cannot meet its initial burden on summary judgment based upon conclusory statements in affidavits. *See Brody v. Enhance Reinsurance Co. Pension Plan*, No. 00 Civ. 9660, 2003 WL 1213084, at *11 (S.D.N.Y. Mar. 17, 2003) (holding that movants did not meet their initial burden on summary judgment by relying upon conclusory affidavit). Similarly, a non-moving

- 15 -

party cannot create a genuine issue of fact based upon "[c]onclusory allegations, conjecture, and speculation . . . ." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (internal quotations and citations omitted).

Playtex has submitted no proper evidence of its *in vivo* study. The declaration of John Finn merely states in a purely conclusory fashion that "prior to February 18, 2008, Playtex was not in possession of *in vivo* test results which demonstrated in a statistically reliable manner, that New Pearl is not, in fact, superior to New Gentle Glide with respect to leakage protection." (Finn Decl. ¶ 24). Playtex provides no documentation to support the claim that its study shows New Pearl is not superior to New Gentle Glide with respect to leakage protection. Playtex attaches no study protocol, no results, no reports and no statistical analysis. In fact, Mr. Finn does not even purport to describe in his declaration the methodology used, the scope of the study, the results and/or the statistical analysis; rather, he merely states when Playtex conducted the study and when it received certain unattached documents containing test data and analyses. Mr. Finn's declaration is wholly conclusory and does not comply with Fed. R. Civ. P. 56(e) because it does not attach the documents it references and because it does not present facts that would be admissible at trial.[6]

Playtex has also failed to submit any evidence that the purportedly new version of Gentle Glide provides improved leakage protection relative to its predecessor. Although the declaration of Keith Edgett references *in vitro* testing between "New" and "Old" Gentle Glide, Playtex has submitted no documentary evidence of this testing such as a test protocol or results. Nor has Playtex adequately described this testing or its results such that the Court could assess its

---

[6]    Among other glaring reasons, Mr. Finn's statement that Playtex's *in vivo* study shows New Pearl is not superior to New Gentle Glide is conclusory, hearsay, and does not comport with the "best evidence" rule. *See, e.g.*, Fed. R. Evid. arts. VIII & X.

scope or adequacy. Thus, Mr. Edgett's conclusory declaration fails for the same reasons as does Mr. Finn's.[7]

Conclusion

For the foregoing reasons, P&G respectfully requests that (a) the Court grant its motion for summary judgment (i) on the First Claim for Relief in the Amended Complaint and declare that Playtex's attempt to challenge P&G's advertising claim of superior protection for Tampax Pearl over Gentle Glide is barred by *res judicata* and (ii) dismiss Playtex's counterclaim filed in the action, and (b) deny Playtex's cross-motion for summary judgment

Dated:    New York, New York
          June 17, 2008

Kramer Levin Naftalis & Frankel LLP

By: _____
        Harold P. Weinberger
        Jonathan M. Wagner
        Tobias B. Jacoby

1177 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 715-9100
hweinberger@kramerlevin.com
jwagner@kramerlevin.com
tjacoby@kramerlevin.com

Of Counsel:

Karl S. Steinmanis, Esq.
Travis C. Cresswell, Esq.
The Procter & Gamble Company
One Procter & Gamble Plaza
Cincinnati, Ohio  45202

Attorneys for Plaintiff
The Procter & Gamble Company

---

[7]    Although we submit the Court should not reach this issue, we also note that even if Playtex's *in vivo* study or the allegedly improved leakage protection of New Gentle Glide were material, and even if Playtex had submitted proper evidence of those facts, the Court should still deny Playtex's cross-motion for summary judgment because P&G has not had an opportunity to conduct discovery with respect to those tests. *See Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment") (internal quotation and citation omitted).

- 17 -